## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **COURTNEY ADAMS,** as Mother and ) | |
| Next Friend of **K.E.** and **V.E.,** ) | |
| minor children of Decedent, and ) | |
| **KIM HUSKEY,** Mother of Decedent and ) | |
| Personal Representative of **ESTATE OF** ) | |
| **ANTHONY EDWARSDS,** ) | |
|     **Plaintiffs,** ) | |
| ) | **Docket No.:_____** |
| **v.** ) | |
| ) | |
| **BLOUNT COUNTY,** ) | JURY TRIAL DEMANDED |
| **BLOUNT COUNTY SHERIFF** ) | |
| **JAMES L. BERRONG,** In His Official Capacity, ) | |
| **UNIDENTIFIED SUPERVISOR** With Sheriff's ) | |
| Department in his Individual Capacity and Official ) | |
| Capacity, **DEPUTY JERRY BURNS,** In his ) | |
| Individual and Official Capacity, and **DEPUTY** ) | |
| **JAMES PATTY,** In His Individual Capacity and ) | |
| Official Capacity, ) | |
|     **Defendants.** ) | |

**"[T]he cause of death is blunt force injuries to the head.
The manner of death is homicide."**

*Autopsy Report for Anthony Edwards, Amy Hawes, MD, Medical Examiner,
Knox County Regional Forensic Center dated September 26, 2016*

## COMPLAINT FOR DAMAGES

    **COMES NOW**, Courtney Adams as Mother and Next Friend of K.E. and V.E.,

the Minor Children of Anthony Edwards, Deceased, and Kim Huskey as Personal

Representative of the Estate of Anthony Adams by and through undersigned counsel,

and files this Complaint pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, The

Constitution of the United States and the Laws of the State of Tennessee.

<u>**PARTIES**</u>

## I.  PLAINTIFF

1.      At all times material hereto, Plaintiff Courtney Adams was the biological mother of K.E. and V.E., who are the Minor Children of Anthony Edwards, Decedent. At the time of Mr. Edwards' death Plaintiff Courtney Adams was not married to Anthony Edwards. Plaintiff Courtney Adams resides in Sevier County, Tennessee.

2.      Plaintiff Kim Huskey is the Personal Representative of the Estate of Anthony Adams and resides in Blount County, Tennessee.

3.      At the times material hereto, Decedent Anthony Edwards was a citizen of the United States residing at 955 Jamesena Miller Dr. Pigeon Forge, Tennessee 37863 in Sevier County.

## II.  DEFENDANTS

4.      At all times material hereto Defendant Jerry Burns was a duly appointed and sworn Deputy Sheriff working for the Blount County Sheriff's Department and resides in Blount County, Tennessee.

5.       At all times material hereto Defendant James Patty was a duly appointed and sworn Deputy Sheriff working for the Blount County Sheriff's Department and resides in Blount County, Tennessee.

6.      At all times material hereto the Defendant "Unidentified Supervisor" was a duly appointed and sworn Deputy Sheriff working for the Blount County Sheriff's Department.

7.      At all times material hereto the Defendants were acting under color of state law.

8.     The Defendants Burns, Patty, and Unidentified Supervisor are sued in their individual and Official capacities. That Supervisor will be identified during discovery and his name will be substituted.

9.     The Blount County Sheriff's Department is a department or division of Blount County with its principal place of business located at 940 E. Lamar Alexander Parkway, Maryville, Tennessee 37804, and is the employer of Defendants Burns, Patty, and the Unidentified Supervisor.

10.     At all times material hereto, Defendant James L. Berrong was the duly elected sheriff of the Blount County Sheriff's Department, and, therefore, statutorily responsible for the following:

(a)     Hiring, training, supervising and firing persons employed as deputy sheriffs;

(b)     Fulfilling his duty to train and supervise deputy sheriffs in the constitutional and legal use of force;

(c)     Overseeing all Blount County officers, including investigation, patrol and any other duties performed by these officers;

(d)     Developing departmental policies, rules and regulations; and,

(e)     Ensuring compliance with these departmental policies, rules and regulations.

11.     At all times material hereto, Blount County is a political subdivision enacted by act within the State of Tennessee.

12.     At all times material hereto, each Defendant acted while in the performance of his official duties, and, therefore, under color of Tennessee state law. In

the alternative, although acting in the performance of their official duties, Defendants Burns and Patty acted intentionally and/or outside the scope of their official authority.

## <u>VENUE AND JURISDICTION</u>

13.　This Court has original jurisdiction over Plaintiff's claims arising out of the United States Constitution and 42 U.S.C. § 1983 by virtue of 28 U.S.C. §§ 1331 and 1343.

14.　Venue is proper in this Court under 28 U.S.C. § 1391 (b)(2) because the events or omissions which give rise to Plaintiff's claims occurred in Blount County, Tennessee.

15.　This Court has supplemental jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1367(a).

16.　Jurisdiction is proper, and this court should assume supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the State Law claims brought individually and officially, pursuant to the Tennessee Governmental Tort Liability Act (TGTLA) Tenn. Code Ann. §§ 29-20-202; 29-20-205; 8-8-302; 8-8-303, and individually as to the Common and Statute Laws of the State of Tennessee.

17.　Plaintiff is entitled to reasonable attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988.

## <u>WAIVER OF IMMUNITY</u>

18.　As set out in the Tennessee Governmental Tort Liability Act, Blount County has waived immunity for the negligence of its deputies and/or employees of the either the Sheriff's Department or the County itself and for the non-negligent actions of deputies of the Sheriff's Department. Tenn. Code Ann. §§ 29-20-202; 29-20-205; 8-8-302; 8-8-303.

19.     As an officer employed by the Blount County Sheriff's Department, Defendant Burns, Patty, and the Unidentified Supervisor are each a "Government Employee" as defined by Tenn. Code Ann. § 29-20-107.

20.     There is no immunity for persons for criminal conduct or conduct which is willful or malicious.

21.     There is no immunity for the willful violation of Anthony Edwards' Constitutionally protected civil rights.

22.     The governmental immunity of Defendants Blount County and James L. Berrong is also removed as a result of Defendant Burns' and Defendant Patty's willful, wanton and/or gross negligence while acting within the scope of their employment with the Blount County Sheriff's Department when they proximately caused injury to Mr. Edwards and, ultimately, Mr. Edwards's death.

23.     There is no immunity for willful, malicious and/or criminal conduct.

24.     There is no immunity for gross negligence.

25.     There is no immunity for the conspiracy to cover up the events that led to the injury and death of Mr. Edwards, which was willful, malicious and criminal.

26.     There is no immunity for the violation of the constitutional rights of Anthony Edwards the deprivation of which was clearly established and should have been appreciated by a reasonable deputy in the performance of his or her duties.

27.     The Blount County Sheriff is statutorily obligated to post a secured bond in an amount no less than One Hundred Thousand Dollars ($100,000.00) to secure the faithful execution of the duties of his office. Tenn. Code Ann. § 8-8-103.

## GENERAL FACTUAL ALLEGATIONS

28.     On the 25th of July, 2016, just after midnight, Defendant Burns was on routine patrol when he observed Decedent Anthony Edwards and another adult, Travis Hickam, minding their own business walking down the road in the vicinity of Winchester Drive and Patterson Road.

29.     Despite the fact that neither Mr. Edwards nor Mr. Hickam were doing nothing more than walking down the road talking with one another, Defendant Burns turned his patrol car around and stopped and seized the two men on the side of the road.

30.     Defendant Burns exited his patrol car and asked each man for their identification. Burns had no reasonable suspicion that either of the two men was engaged in unlawful activity or had engaged in any unlawful activity.

31.     Mr. Edwards chose not to converse with Defendant Burns. Mr. Edwards turned from Defendant Burns and started to go on his way, at which point Defendant Burns grabbed Mr. Edwards, and Mr. Edwards began to run. Defendant Burns chased him on foot, deploying his Taser at Plaintiff's Decedent's back. Anthony Edwards had the right to not converse with Defendant Burns or any other member of Law Enforcement and to resist an unlawful arrest and/or unlawful use of force by Defendant Burns commensurate with the amount of the unlawful use of force by Burns on Edwards. Edwards' only sought to exercise his rights and to protect himself from the unlawful arrest and unlawful use of force by Burns on him as can plainly be heard on the audiotape from Burns' audio recording.

32.     Defendant Burns grabbed Mr. Edwards, raised him up and violently slammed his head onto the concrete pavement. What ensued is lost for all time as Burns'

body camera ceased to operate. However, over several minutes Anthony Edwards can be heard on the audio recording informing Burns that he (Edwards) is having a seizure; that Burns is hurting him; that Burns hit him in the face; that Burns is beating him and that Edwards fears for his life. Later on the same tape Edwards can be heard telling another officer who has arrived, believed to be Defendant Patty, that Burns hit him in the face and to please call 911. *See* Audio Recording from 045343, starting at counter number 1:30. At counter number 9:00 the tape goes mysteriously silent and does not start up again for nearly four minutes.

33. From this point forward on all of the body camera recordings and audio recordings, Defendant Burns can be heard telling his story to various law enforcement personnel, making refinements to his version of the facts as he goes, including telling someone that Edwards was "snoring" so Burns knew that Edwards was "out". The terrible reality is that Edwards was not snoring; rather he can be heard whimpering in pain and struggling to breathe as Defendant Burns snickers about the encounter. *See* Audio Recording from 045343, starting at counter number 16:50 and again at 23:00.

34. On Audio Recording from 051611, at counter number 21:32 Defendant Patty can be heard speaking to a supervisor whose identity is unknown, and telling that supervisor that "Jerry[1] slammed him; you knew that, right?" at which point the unidentified supervisor responds, "was it a slam, or a drop?" in a clear effort to mold the facts of the story before the crime scene technicians arrived to take formal statements from the deputies.

35. On Audio Recording from 052807, a supervisor who is not identified speaks to Defendant Burns and at counter number 16:11 asks Defendant Burns, "Did you

---

[1] "Jerry" is Defendant Burns.

slam him, or drop him?" The supervisor instructs Defendant Burns to "be consistent" when he gives his formal statement.

36.    Edwards lay on the ground suffering for over half an hour, waiting for the arrival of an ambulance to transport him. Over an hour passed after the arrival of the ambulance while they waited for LifeStar to arrive to take Decedent Edwards to the University of Tennessee Medical Center where he died the following day from his injuries.

37.    An autopsy conducted by Dr. Amy Hawes of the Medical Examiner's Office determined that the cause of death was blunt force injuries to Mr. Edwards' head and that the manner of death was "homicide." The autopsy noted that Edwards also had acute rib fractures of his right ribs, 5 through 9, and a left rib fracture, at number 5.

38.    As a result of the actions and inactions of the Defendants Mr. Edwards suffered injuries, hospitalization and death, the Decedent incurred medical bills of at least Forty Eight Thousand Four Hundred Sixty Seven Dollars and Eighty Five Cents ($48,467.85) for hospitalization and treatment; for the air ambulance, LifeStar; for Rural Medical treatment; and Six Thousand Two Hundred Eleven and Two cents ($6,211.02) for cremation and funeral expenses.

39.    As a result of his death, Mr. Edwards left behind two minor children who have lost the love, society, affection and guidance of their father for which they must be compensated under the Wrongful Death Act and the intentional violation of Edwards' Substantive Due Process rights by the arbitrary and wanton acts of violence on Mr. Edwards during his apprehension for which there was no probable cause or reasonable suspicion of criminal conduct as exists in this case shocks the conscience of the community and the courts. Mr. Edwards' right to Substantive Due Process was a clearly

established right on July 25, 2016 which right would have been known to a reasonable law enforcement officer.

40.     As a result of actions and inactions of the Defendants Mr. Edward suffered injuries pre-death of which the Decedent's Estate is entitled to be compensated.

## UNITED STATES OF AMERICA
## CONSTITUTION CLAIMS

### COUNT I
### UNLAWFUL SEIZURE AND FALSE ARREST UNDER FOURTH AND FOURTEENTH AMENDMENTS

41.     Plaintiff adopts paragraphs 1 through 40 as fully set forth herein.

42.     Plaintiff brings this action against Defendants Burns and Patty pursuant to 42 U.S.C. § 1983 for their actions taken under color of State Law.

43.     Plaintiff's Decedent Anthony Edwards had a Constitutional right to be free from unlawful seizure/false arrest on other than probable cause.

44.     Defendant Burns had no probable cause to arrest Edwards on the night in question. He likewise had no articulable suspicion that Edwards was engaged, or about to be engaged, in any criminal conduct at the time that Burns detained Edwards and his friend, Hickam.

45.     Defendant Burns and Defendant Patty then conspired to author and execute a Use of Force report containing false statements and false information in order to create the erroneous impression that Defendant Burns had some lawful basis on which to arrest Decedent Edwards so as to attempt to justify the use of force on Edwards.

46.     The right not to be arrested on less than probable cause, or to be detained without articulable suspicion for such detention, was a clearly established Constitutional right on July 25, 2016.

47.     Any member of Law Enforcement would have known on July 25, 2016 that arresting Edwards on less than probable cause, or detaining Edwards without any reasonable suspicion of criminal wrongdoing, would be a violation of the Constitutional rights of Decedent Edwards. These Defendants were on fair notice that their conduct would be unconstitutional at the time that they engaged in the unconstitutional conduct.

48.     Defendant Blount County Sheriff/Blount County knew that the arrest was unconstitutional because *after the fact* they attempted, but failed, to locate a felony warrant that would enable them to try to justify the unconstitutional conduct of Defendants Burns and Patty.

49.     The fact that Defendant Burns' supervisor was desperately calling Blount, Sevier, and Knox Counties attempting to find open felony warrants on Mr. Edwards is an admission that they all knew that Burns' and Patty's actions were unconstitutional and the Sheriff's Department supervisors were attempting to backfill facts to create probable cause. *See* Radio Calls, transmissions at 1:18:59; 1:28:18; 1:29:41; 1:36:29; and 1:37:15 (*"Can you look and see if it's a felony? It's kind of important."* and *"OK. I was kind of hoping it was a felony."*)

50.     As a result of the unconstitutional seizure/detention and/or arrest, Anthony Edwards was inexcusably injured, handcuffed, bleeding, and begging for medical care while lying on the ground dying while Defendant Burns tried to figure out what kind of charges he could load up on Edwards.

51.     The actions of Defendants Burns and Patty which proximately caused the injuries to Mr. Edwards were criminal, willful, wanton and/or done in reckless disregard to the rights of the Decedent Edwards and as such warrant the imposition of punitive damages to deter them and others like them in the future from engaging in similar conduct.

52.     Plaintiffs are entitled to reasonable attorneys fees and costs.

**WHEREFORE** Plaintiff demands judgment against Defendants Burns and Patty in the amount of Twenty-Five Million Dollars and No Cents ($25,000,000.00), in punitive damages, costs of this action, reasonable attorneys fees, and pre-judgment and post-judgment interest.

## COUNT II
## EXCESSIVE USE OF FORCE BY DEFENDANT BURNS

53.     Plaintiff adopts paragraphs 1 through 40 as fully set forth herein.

54.     Anthony Edwards had the Constitutional right under the Fourth and Fourteenth Amendments to be free from the use of excessive force by these Defendants in effecting an arrest.

55.     Because Defendant Burns had no lawful basis on which to arrest Edwards at the time that he employed force, his use of force was unconstitutional and in violation of the Fourth and Fourteenth Amendments.

56.     By Defendant Burns' own admissions at the scene of the take-down of Edwards, Burns picked Edwards up off the ground and slammed his head and body onto the concrete pavement thereby causing the injuries later noted in the autopsy report. A supervisor who is not yet identified speaks to Defendant Burns and at counter number 16:11 asks Defendant Burns, "Did you slam him, or drop him?" Burns responds that he

"slammed" Edwards to the ground and then the supervisor instructs Defendant Burns to "be consistent" when he gives his formal statement to investigators and completes his reports.

57.     Defendant Burns' actions in picking Edwards up off the ground and intentionally slamming him down on the concrete pavement, causing Edwards' head to slam against the hard surface, was done with such force as to cause fractures to Edwards' skull, along with multiple rib fractures.

58.     The amount of force and ultimate killing of Edwards was far out of proportion to the circumstances as they existed and were known to exist on July 25, 2016 and/or was done for the purpose of inflicting pain and punishing Edwards for running away from Defendant Burns.

59.     The use of excessive force in making a detention or arrest was a violation of Edwards' Fourth Amendment rights secured to him by the Fourteenth Amendment. It was clear that Defendant Burns knew he had used excessive force because he attempted to downplay the seriousness of Edwards' injuries by refusing Edwards' pleas to call for help prior to the final slamming of Edwards' head onto the pavement and then suggesting that Edwards was "snoring" when anyone listening to the audio tape would know that those sounds were not snoring, but rather whimpers of pain and the sounds of a human being struggling to breathe. *See* Audio Recording from 045343, starting at counter number 16:50 and again at 23:00.

60.     Edwards had a constitutional right to be free from the use of excessive force against him and free from the unconstitutional use of deadly force. The right to be free from excessive force was a Constitutional right that was clearly established at the

time of Burns' encounter with Edwards. The actions of Burns in slamming Edwards head-first onto the hard pavement constituted deadly force.

61.     At all times material hereto, these rights were clearly established at the time that Defendants Burns and Patty "arrested" Edwards and the actions of Defendants Burns and Patty violated those rights. Moreover, any reasonable person would have known that their actions violated Edwards' rights.

62.     Defendant Burns accosted Edwards and his companion, Travis Hickam, while they were doing nothing more than walking down a country road at night. Burns' actions in his initial encounter with Edwards and his companion was a seizure subject to the mandates of the Fourth Amendment to the Constitution of the United States.

63.     By ordering Hickam to remain where he was when Edwards chose not to talk with Burns, Burns had seized Hickam. By chasing Edwards who had committed no crime in the presence of Burns and there was no reason to believe that Edwards had committed a crime, Defendant Burns seized Edwards pursuant to the Fourth Amendment.

64.     Defendant Burns knew, as did the other officers who came to the scene, that the failure to have probable cause to arrest Edwards at that time constituted a violation of the constitutional rights of Edwards to be free from an unreasonable seizure and *would directly impact the degree of force that Burns and Patty were entitled to use*.

65.     The fact that Defendant Burns' supervisor was desperately calling Blount, Sevier, and Knox Counties attempting to find open warrants on Mr. Edwards and ultimately rejoicing with sounds of cheer "*yay*" more than twenty-five minutes after Edwards had been beaten to the point of brain death is an admission that the supervisor

and Burns and Patty knew that Burns' actions were unconstitutional and they were attempting to backfill facts to create probable cause. *See* Radio Calls, transmissions at 1:18:59; 1:28:18; 1:29:41; 1:36:29; and 1:37:15 (*"Can you look and see if it's a felony? It's kind of important." and "OK I was kind of hoping it was a felony."); see also 911 Recordings at 19:48 and -51:52*

66.     Defendant Burns bashed Edwards head against the hard pavement. These actions constituted the use of deadly force. The use of deadly force under the circumstances as they existed on July 25, 2016 was objectively unreasonable and any reasonable person would have understood that the right of Edwards to his life was greater than the right of Burns to stop Edwards from running away where Edwards was not suspected to have committed any crime involving the infliction of serious physical harm, nor had he committed a crime in Burns' presence, nor did Edwards pose a threat to the deputy or others by running away.

67.     As a result of the use of excessive force on Edwards, Edwards lay on the ground conscious and suffering for over half an hour, waiting for the arrival of an ambulance to transport him. Over an hour passed after the arrival of the ambulance while they waited for LifeStar to arrive to take Decedent Edwards to the University of Tennessee Medical Center where he died the following day from his injuries.

68.     An autopsy conducted by Dr. Amy Hawes of the Medical Examiner's Office determined that the cause of death was blunt force injuries to Mr. Edwards' head and that the manner of death was "homicide". The autopsy also noted that Edwards also had acute rib fractures of his right ribs, 5 through 9, and a left rib fracture, at number 5. These injuries are so severe, and the force required to inflict them, that the conduct of Defendant Burns in causing them would outrage a normal person.

69.     As a result of his injuries, hospitalization and death, the Decedent incurred medical bills at a minimum of Forty-Eight Thousand Four Hundred Sixty Seven Dollars and Eighty Five Cents ($48,467.85) for hospitalization and treatment; for the air ambulance, LifeStar; for Rural Medical treatment; and Six Thousand Two Hundred Eleven and two cents ($6,211.02) for cremation and funeral expenses.

70.     As a direct and proximate result of the Constitutional violations of Mr. Edwards rights, Mr. Edwards was seriously injured, and suffered terribly as he lay on the ground bleeding from his ear begging for medical assistance. Edwards was consciously aware of the grievous nature of his injuries, whimpering in pain and begging Defendant Patty for help. These injuries caused Edwards to suffer terrible pain and fear in his final hours of consciousness.

71.     The conduct on the part of Defendant Burns was criminal, malicious, intentional, and/or reckless so as to warrant the imposition of punitive damages against Defendant Burns for his callous indifference to the rights of Decedent Edwards.

**WHEREFORE** Plaintiff demands judgment against Defendant Burns in the amount of Twenty-Five Million Dollars and No Cents ($25,000,000.00), in punitive damages, costs of this action, reasonable attorneys fees, and pre-judgment and post-judgment interest.

### COUNT III
### CONSPIRACY BY DEFENDANTS BURNS AND PATTY TO FALSIFY THEIR USE OF FORCE REPORT TO CREATE A FALSE JUSTIFICATION FOR DEFENDANT BURNS' USE OF EXCESSIVE FORCE

72.     Plaintiff adopts paragraphs 1 through 40 as fully set forth herein.

73.     Falsifying facts to establish probable cause and/or justification for the use of force is unconstitutional, unlawful, and criminal.

74.     Even the most inexperienced and untrained law enforcement officer would have known that lying on the official Use of Force Report in order to justify the use of excessive force and/or to attempt to establish probable cause to arrest would be a violation of the constitutional rights of Anthony Edwards.

75.     Completing the Use of Force Report was not a discretionary act on the part of Defendants Burns and Patty.

76.     Completion of that report was mandatory.

77.     Defendants Burns and Patty falsified the facts in the report in order to create the false extra-judicial record that there was probable cause to arrest Edwards, thereby justifying Defendant Burns' excessive use of force and even further allowing the dissemination of "fake news" to the media so that the public at large and citizens of Blount County could justify in their minds the actions of the officers in killing Edwards.

78.     As a result of the falsification by Defendant Burns and Defendant Patty of the facts contained in the Use of Force report, Defendant Burns was exonerated by his supervisor and his Department of the use of excessive force, allowing Defendant Burns to remain on duty even as his illegal and unlawful actions rendered Anthony Edwards brain dead.

79.     As a direct and proximate result of the violation of Mr. Edwards constitutional rights by Defendants Burns' and Patty's, Edwards did not live to be able to prosecute Burn's and Patty internally through their departmental processes. Instead, their falsifications were used to justify the use of deadly force on Edwards, a violation of

his constitutional rights under the Fourth and Fourteenth Amendments on July 25, 2016.

80.     This conduct was so outrageous and reprehensible as to support the imposition of punitive damages. It strikes at the very heart of our judicial system to allow law enforcement officers to lie in their reports to justify their unconstitutional actions. Such conduct is outrageous and must be punished.

**WHEREFORE** Plaintiff demands judgment against Defendants Burns and Patty in the amount of Three Million Dollars and No Cents ($3,000,000.00) as damages for the Constitutional violation, Twenty-Five Million Dollars and No Cents ($25,000,000.00), in punitive damages, costs of this action, reasonable attorneys fees, and pre-judgment and post-judgment interest.

**COUNT IV**
**CONSPIRACY ON THE PART OF THE SUPERVISOR ON THE SCENE TO TAILOR TESTIMONY OF DEFENDANT BURNS RELATING TO BURNS' USE OF FORCE**

81.     Plaintiff adopts paragraphs 1 through 40 as fully set forth herein.

82.     Defendant Burns was coached by an unidentified supervisor on the scene as to what to say when he was formally interviewed about the circumstances that resulted in the physical injury to Anthony Edwards, and when filling out the Use of Force report.

83.     It was the job of the supervisor to protect the constitutional rights of Anthony Edwards, and not to cover up the unconstitutional conduct of his subordinate deputy, Defendant Burns.

84.     Instead of protecting Anthony Edwards from the violation of his constitutional rights to be free from false arrest and violation of due process, as well as

the use of excessive force to effectuate the false arrest, the unidentified supervisor elected to coach Burns as to what to put in the Use of Force report to avoid civil liability for Burns' actions on the night of July 25, 2016 and what to say to the investigators when they arrived to take his formal statement.

85.    As Decedent Edwards lay on the ground suffering and whimpering in pain, this unidentified supervisor called all of the surrounding counties attempting to establish **after-the-fact** that Edwards was wanted for a felony. *See* Radio Calls, transmissions at 1:18:59; 1:28:18; 1:29:41; 1:36:29; and 1:37:15 (*"Can you look and see if it's a felony? It's kind of important."* and *"OK. I was kind of hoping it was a felony."*)

86.    Despite the fact that it was clear to the unidentified supervisor on the night of July 25, 2016 that Defendant Burns had used excessive force, the supervisor coached Burns and Patty as to how to word their report and how to respond to the formal interview in order to avoid a determination that they had used excessive force and thus to avoid potential civil liability and/or criminal culpability.

87.    Armed with the coaching by the supervisor, Defendants Burns and Patty completed the mandated Use of Force report and their formal interviews using false information and statements.

88.    The false statements and/or information were used to rubber stamp the finding of justification in the use of force and killing of Edwards which the unidentified supervisor knew would be the case, and this false information ultimately was broadcast to the media and the public at large to create "fake news" so that the public and citizens of Blount County could justify in their minds the actions of the officers.

89.    As a result of the finding that Defendants Burns and Patty were justified in their use of force, once again the message from Blount County and the Blount County

Sheriff's Office was sent to deputies working for the Blount County Sheriffs Department that their unconstitutional conduct would be ratified by their employer and they would face no adverse consequences as a result.

90.     Decedent Anthony Edwards paid with his life for the unconstitutional use of force by Defendants Burns and Patty during his arrest without probable cause.

91.     The unidentified supervisor facilitated the finding of justification by his unlawful and unconstitutional behavior and as a direct and proximate result Mr. Edwards suffered damages.

92.     Plaintiff's Decedent has been damaged by this conduct, which is so outrageous as to warrant the imposition of punitive damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant the Unidentified Supervisor for the Blount County Sheriff's Department in the amount of One Hundred Thousand Dollars and No Cents ($100,000.00) in special damages, Three Hundred Thousand Dollars and No Cents ($300,000.00) in General Damages, Ten Million Dollars and No Cents ($10,000,000.00) in punitive damages, pre-judgment interest, post-judgment interest, and costs of this action.

**COUNT V**
**RATIFICATION BY SHERIFF BERRONG AND BLOUNT COUNTY OF**
**UNCONSTITUTIONAL CONDUCT OF SUBORDINATES**

93.     Plaintiff adopts paragraphs 1 through 40 as fully set forth herein.

94.     Defendant Berrong had a duty to train, manage, and supervise those persons working for him to prevent constitutional violations of its citizens and the members of society to which members of law enforcement encounter.

95.     Defendant Berrong utterly refused to screen, hire, train, monitor, supervise, control, assign, counsel, investigate, and discipline those persons working for

him which resulted in the adoption and ratification of unconstitutional practices of his department of which Mr. Edwards suffered pain and death.

96.     Defendant Berrong failed to train and supervise Defendants Burns and Patty as to the proper circumstances under which force could be used. He failed to properly and completely investigate allegations of the use of excessive force within his Department, and attempted to cover-up serious injuries and deaths to citizens as a result of the use of excessive force by his subordinates.

97.     Defendant Berrong knew from past litigation, complaints and incidences that the deputies in his department routinely used excessive force in apprehending and/or taking into custody suspects and often engaged in the gratuitous infliction of pain and punishment. Not only did Berrong not discourage such excessive and/or gratuitous violence, he himself actually participated in it, thus sending the message to his subordinates that such conduct was acceptable on the job and was clearly foreseeable.

98.     Defendant Berrong failed to obtain legitimate and independent investigations into claims by the public of the excessive use of force by his subordinates. By his failure to conduct impartial investigations and to discipline and retrain those officers under his command who engaged in the use of excessive force, Berrong acquiesced in the unconstitutional conduct of those persons working for the Sheriff's Department and permitted a *de facto* policy that allowed the use of excessive force and/or gratuitous violence by those deputies employed by the Blount County Sheriff's Department.

99.     This culture of violence within the Blount County Sheriff's Department had existed for years, long enough for Defendant Berrong and Defendant Blount County to be aware of it.

100.     By their knowledge and failure to take measures to alter the culture of violence/excessive force/gratuitous violence within the Sheriff's Department, Defendant Berrong and Defendant Blount County have approved and ratified the conduct of the subordinates engaged in the use of excessive force and/or gratuitous violence, and this *de facto* policy resulted in constitutional violations of Mr. Edwards.

101.     Sheriff Berrong enacted policies and procedures which were approved/ratified by Blount County that resulted in the violation of Edwards' constitutional rights or, in the alternative, maintained a practice of turning a blind eye to evidence and/or allegations that raised questions about the use of excessive force within the Sheriffs Department and that that practice resulted in systematic deprivation of the constitutional rights of citizens such as Anthony Edwards which was known to, and ratified by, Blount County. Among these polices and procedures was the practice of "coaching" of deputies by Blount County Sheriff's department personnel in a supervisory position in how to present their testimony on their Use of Force reports and in their formal statements so as to enable deputies who used force to avoid a finding of the unjustified use of force. This was done to avoid or reduce the incidences where the County would be found legally liable for the unlawful/unconstitutional actions of deputies.

102.     Decedent Anthony Edwards was subjected to the use of excessive force as a result of the failure of Defendants Berrong and Blount County to check/control the

baser natures of certain deputies in the Blount County Sheriff's Department who were unable to control their emotions when apprehending persons without probable cause.

103.    Decedent suffered severe physical injuries and suffered awful pain and fear as he lay on the ground following the brutal attack by Defendant Burns, and most of the last hours of his life were filled with almost unbearable pain and the knowledge that he desperately needed medical care which was not immediately provided as officers on the scene took their time calling for medical help.

104.    As a direct and proximate result of Defendants Berrong and Blount County's actions and inactions to Mr. Edwards' constitutional rights were violated and injuries sustained.

105.    Decedent suffered severe head trauma, fractured ribs which required medical care and treatment, pain, fear and humiliation at being rendered impotent to protect himself from the injuries inflicted on him and from hearing Defendant Burns make light of his suffering by suggesting that Burns heard Edwards "snoring" when in reality Edwards was struggling to breathe due to his injuries.

**WHEREFORE** Plaintiff demands judgment against Defendants Berrong and Blount County in the amount of Twenty-Five Million Dollars and No Cents ($25,000,000.00), costs of this action, reasonable attorneys fees, and pre-judgment and post-judgment interest

## COUNT VI
## VIOLATION OF EDWARDS' SUBSTANTIVE DUE PROCESS RIGHTS BY DEFENDANT BURNS RESULTING IN EDWARDS' DEATH.

106.    Plaintiff adopts paragraphs 1 through 40 as fully set forth herein.

107.    At all times material hereto, Decedent Edwards had a right not to be subjected to excessive force/deadly force for doing nothing more than walking down a

country road with a friend, talking. Edwards' right to the sanctity of his life was a clearly established right, and one which a reasonable law enforcement officer would have known.

108.    At all times material hereto, Defendant Burns had no right to use deadly force, or force reasonably likely to cause serious bodily injury, when attempting to arrest Edwards without probable cause. Such conduct was unconstitutional and violated Edwards' clearly established Substantive Due Process rights under the Fourth and Fourteenth Amendments to the Constitution of the United States. A reasonable officer would have known that these actions violated the constitutional rights of the Decedent Edwards.

109.    Notwithstanding knowing that such conduct would violate Decedent's constitutional rights, Defendant Burns completely lost control of his emotions causing Burns to intentionally and forcefully slam Edwards head first to the ground, causing Edwards' head to smash into the pavement and resulting in multiple fractures to his head and multiple rib fractures.

110.    Mr. Edwards died from his injuries, leaving behind two small children.

111.    Defendant Burns' actions were unnecessary, the unconstitutional use of force, and unnecessarily brutal. The intentional nature of his conduct violated the Substantive Due Process rights of Edwards to the sanctity of his life, and are so shocking to the conscience of the community as to require the finding of liability against Defendant Burns and the imposition of punitive damages against him.

112.    Plaintiff, on behalf of Decedent's children, is entitled to be compensated for the loss of their father, his society and companionship.

113.   Plaintiff's Decedent incurred medical bills of at least Forty Eight Thousand Four Hundred Sixty Seven Dollars and Eighty Five Cents ($48,467.85) for hospitalization and treatment; for the air ambulance, LifeStar; for Rural Medical treatment; pain and suffering which is documented on the audio recordings of the Blount County Sheriff's deputies and almost too painful to listen to.

**WHEREFORE,** Plaintiff Courtney Adams, on behalf of the minor children, demands judgment against Defendant Burns and Defendant Blount County pursuant to T.C.A. § 8-8-302 in the amount of One Hundred Thousand Dollars ($100,000.00) in special damages, Three Hundred Thousand Dollars ($300,000.00) in General Damages, Twenty-Five Million Dollars and No Cents ($25,000,000.00) in punitive damages, pre-judgment interest, post-judgment interest, and costs of this action.

### LAWS OF THE STATE OF TENNESSEE CLAIMS

### COUNT VII
### NEGLIGENT USE OF FORCE DURING ARREST

114.   Plaintiff adopts paragraphs 1 through 40 as fully set forth herein.

115.   Defendant Burns negligently employed force in attempting to arrest Decedent Anthony Edwards.

116.   Defendant Burns was only permitted to use the degree of force that was commensurate with the "crime" alleged and the surrounding circumstances.

117.   Edwards had committed no crime and Defendant Burns had no reason to believe that Edwards had committed a crime when Defendant Burns approached Decedent and demanded identification and dialogue.

118.   At the time that Defendant Burns employed force to arrest Edwards for "resisting arrest" when there was no legal basis for a seizure or an arrest to begin with,

Burns negligently slammed Mr. Edwards' head on the pavement with substantial force causing severe injury, not taking into account the spot where Edwards' head would strike the ground.

119.    That failure to consider the location where Defendant Burns was going to slam Edwards to the ground was negligent and resulted in injuries to Edwards, including a fractured skull, multiple contusions and bruises on Edwards' arms and legs, and multiple fractures of Edwards' anterior ribs resulting in the need for medical medical treatment.

120.    Defendant Burns was not justified in the use of deadly force and by his negligent acts the force employed amounted to deadly force.

121.    As a result of the injuries, Plaintiff's Decedent incurred medical bills of at lease Forty Eight Thousand Four Hundred Sixty Seven Dollars and Eighty Five Cents ($48,467.85) for hospitalization and treatment; for the air ambulance, LifeStar; for Rural Medical treatment; pain and suffering which is documented on the audio recordings of the Blount County Sheriff's deputies and almost too painful to listen to.

**WHEREFORE,** Plaintiff demands judgment in favor of the Estate of Anthony Edwards against Defendant Burns and Defendant Blount County pursuant to T.C.A. § 8-8-302 in the amount of One Hundred Thousand Dollars and No Cents ($100,000.00) in special damages, Three Hundred Thousand Dollars and No Cents ($300,000.00) in General Damages, Ten Million Dollars and No Cents ($10,000,000.00) in punitive damages, pre-judgment interest, post-judgment interest, and costs of this action.

## COUNT VIII
## BATTERY ON ANTHONY EDWARDS
## BY DEFENDANT BURNS

122.    Plaintiff adopts paragraphs 1 through 40 as fully set forth herein.

123.    In the alternative, Defendant Burns committed aggravated battery on Decedent Anthony Edwards by slamming Edwards to the ground, causing Edwards' skull to strike the concrete pavement with substantial force causing fractures to Edwards skull and bleeding in the brain, and slamming Edwards to the ground with such force the Defendant Burns fractured Edwards' ribs in multiple locations, causing severe trauma and pain to Edwards.

124.    Defendant Burns intentionally caused these injuries and pain to Edwards to punish Edwards for running away from Burns.

125.    Edwards begged Burns to call for medical help because of his injuries and Burns failed and refused to do so until Defendant Burns could get his story straight to justify the brutality of his assault on Edwards.

126.    Defendant Burns sadistically permitted Edwards to suffer and whimper in pain, struggling to breathe, while jokingly telling persons who came to the scene that Edwards was just "snoring". *See* Audio Recordings, from 045343, starting at counter number 16:50 and again at 23:00.

127.    As a result of this aggravated battery in which Defendant Burns inflicted injuries likely to cause great bodily injury and/or death, Plaintiff's Decedent incurred medical bills of at least Forty Eight Thousand Four Hundred Sixty Seven Dollars and Eighty Five Cents ($48,467.85) for hospitalization and treatment; for the air ambulance, LifeStar; for Rural Medical treatment; and pain and suffering documented on the audio

recordings of the Blount County Sheriff's deputies that is almost too painful to listen to and fear for his life.

128.     Plaintiff's Decedent was consciously aware of the grievous nature of his injuries as he begged Defendant Burns and Defendant Patty to call medical help for him.

129.     This conduct was so malicious, willful, wanton and/or criminal as to warrant the imposition of punitive damages against the Defendants.

**WHEREFORE,** Plaintiff Kim Huskey, as Personal Representative for the Estate of Anthony Edwards, demands judgment against Defendant Burns and Defendant Blount County pursuant to T.C.A. § 8-8-302 in the amount of One Hundred Thousand Dollars and No Cents ($100,000.00) in special damages, Three Hundred Thousand Dollars and No Cents ($300,000.00) in General Damages, Ten Million Dollars and No Cents ($10,000,000.00) in punitive damages, pre-judgment interest, post-judgment interest, and costs of this action.

### COUNT IX
### EDWARDS PRE-DEATH, PAIN SUFFERING AND FRIGHT

130.     Plaintiff adopts paragraphs 1 through 40 as fully set forth herein.

131.     As a result of the unlawful actions by the Defendant Burns Mr. Edwards was brutally beaten and slammed onto the pavement, suffering broken ribs, bruises and contusions about his legs and arms, and multiple fractures to his head.

132.     Those injuries caused Mr. Edwards severe pain, which can be heard on the recordings. Edwards can be heard whimpering in pain and struggling to breathe as Defendant Burns snickers about the encounter. *See* Audio Recording from body camera 045343, starting at counter number 16:50 and again at 23:00.

133.    As a result of the false arrest and injuries, Plaintiff's Decedent incurred medical bills of at a minimum Forty-Eight Thousand Four Hundred Sixty Seven Dollars and Eighty Five Cents ($48,467.85) for hospitalization and treatment the air ambulance, LifeStar; for Rural Medical treatment; pain, suffering and fear for his life that is documented on the audio recordings of the Blount County Sheriff's deputies and almost too painful to listen to.

134.    This assault on Edwards was malicious, willful and reckless such that it warrants the imposition of punitive damages to deter Defendant Burns from similar conduct in the future and to act as a deterrent to others who might otherwise engage in such conduct.

**WHEREFORE** Plaintiff Kim Huskey demands judgment against Defendant Burns and Defendant Blount County pursuant to T.C.A. § 8-8-302 in the amount of Fifty-Five Thousand Dollars and No Cents ($55,000.00) in special damages, Three Hundred Thousand Dollars and No Cents ($300,000.00) in General Damages, Ten Million Dollars and No Cents ($10,000,000.00) in punitive damages, pre-judgment interest, post-judgment interest, and costs of this action.

## COUNT X
## FALSE ARREST OF DECEDENT ANTHONY EDWARDS

135.    Plaintiff adopts paragraphs 1 through 40 as fully set forth herein.

136.    Mr. Edwards had never committed any offense for which Defendant Burns could place him under arrest at the time of the encounter with Burns. Therefore, Decedent could not have been "resisting" arrest at the time that Defendant Burns fired his Taser and/or slammed Edwards to the ground and beat Plaintiff's Decedent.

137. The recordings of various deputies' body cams and recording devices reveal that upon realizing how gravely injured Anthony Edwards was, one or more Blount County Deputies began calling around attempting to find open felony warrants on Mr. Edwards. *See* Radio Calls, transmissions at 1:18:59; 1:28:18; 1:29:41; 1:36:29; and 1:37:15 (*"Can you look and see if it's a felony? It's kind of important." and "OK I was kind of hoping it was a felony."* These statements are made by an unidentified Blount County Deputy.)

138. These transmissions constitute an acknowledgement and admission that Blount County deputies had no basis on which to "arrest" Mr. Edwards, and thus their actions taken to effectuate that "arrest" were unlawful.

139. These transmissions constitute an acknowledgement and admission that Mr. Edwards was justified in attempting to prevent the unlawful arrest and/or the unlawful use of force on him to accomplish and unlawful arrest.

140. These transmissions constitute an acknowledgement and admission that Blount County deputies had no basis for the use of deadly force on Mr. Edwards, and thus Defendant Burns' actions taken to effectuate that "arrest" were unlawful.

141. The efforts of various members of the Blount County Sheriff's Department to "massage" the facts prior to the arrival of those individuals who would officially take statements from Defendant Burns and the others in order to justify the brute force used by Defendant Burns is outrageous.

142. As a result of the unlawful arrest by Defendant Burns, Mr. Edwards was brutally beaten and slammed onto the pavement, suffering broken ribs, bruises and contusions about his legs and arms, and multiple fractures to his head.

143.    Those injuries caused Plaintiff's Decedent severe pain, which can be heard on the recordings. Edwards can be heard whimpering in pain and struggling to breathe as Defendant Burns snickers about the encounter. *See* Audio Recording from body camera 045343, starting at counter number 16:50 and again at 23:00.

144.    As a result of the false arrest and injuries, Plaintiff's Decedent incurred medical bills of at a minimum Forty Eight Thousand Four Hundred Sixty Seven Dollars and Eighty Five Cents ($48,467.85) for hospitalization and treatment the air ambulance, LifeStar; for Rural Medical treatment; pain and suffering and fear for his life which is documented on the audio recordings of the Blount County Sheriff's deputies and almost too painful to listen to.

145.    This false arrest was malicious, willful and reckless such that it warrants the imposition of punitive damages to deter Defendant Burns from similar conduct in the future and to act as a deterrent to others who might otherwise engage in such conduct.

**WHEREFORE** Plaintiff Kim Huskey demands judgment against Defendant Burns and Defendant Blount County pursuant to T.C.A. § 8-8-302 in the amount of Fifty-Five Thousand Dollars and No Cents ($55,000.00) in special damages, Three Hundred Thousand Dollars and No Cents ($300,000.00) in General Damages, Ten Million Dollars and No Cents ($10,000,000.00) in punitive damages, pre-judgment interest, post-judgment interest, and costs of this action.

### COUNT XI
### WRONGFUL DEATH OF ANTHONY EDWARDS

146.    Plaintiff adopts paragraphs 1 through 40 as fully set forth herein.

147. At all times material hereto, Defendants owed a duty to Decedent Edwards to refrain from injuring Edwards during an arrest.

148. Defendant Burns negligently slammed Edwards to the ground, slammed Edwards' head against the pavement causing multiple fractures in his head, and caused multiple rib fractures.

149. As a direct and proximate result of the negligent actions and inactions of Defendant Burns Mr. Edwards died, leaving behind two small children.

150. Defendant Burns' actions were negligent and unnecessary.

151. Plaintiff, on behalf of Decedent's children, is entitled to be compensated for the loss of their father.

152. Plaintiff's Decedent incurred medical bills of at a minimum Forty Eight Thousand Four Hundred Sixty Seven Dollars and Eighty Five Cents ($48,467.85) for hospitalization and treatment; for the air ambulance, LifeStar; for Rural Medical treatment; and pain and suffering He also incurred funeral expenses in the amount of Six Thousand Two Hundred Eleven Dollars and two cents ($6,211.02).

**WHEREFORE,** Plaintiff Courtney Adams, on behalf of the minor children, demands judgment against Defendant Burns and Defendant Blount County pursuant to T.C.A. § 8-8-302 in the amount of One Hundred Thousand Dollars and No Cents ($100,000.00) in special damages, Three Hundred Thousand Dollars and No Cents ($300,000.00) in General Damages, Twenty-Five Million Dollars and No Cents ($25,000,000.00) in punitive damages, pre-judgment interest, post-judgment interest, and costs of this action.

## COUNT XII
## NEGLIGENT TRAINING SUPERVISION BY BLOUNT COUNTY
## AND THE BLOUNT COUNTY SHERIFF JAMES BERRONG

153. Plaintiff adopts paragraphs 1 through 40 as fully set forth herein.

154. Defendant Berrong had a duty to train, manage, and supervise those persons working for him.

155. Defendant Berrong negligently failed to train and supervise Defendants Burns, Patty and the Unidentified Supervisor as to the proper circumstances under which force could be used. He negligently failed to properly and completely investigate allegations of the use of force, and attempted to cover-up serious injuries and deaths to citizens as a result of the use of negligent force by his subordinates.

156. Defendant Berrong knew from past litigation, complaints and incidences that the deputies in his department negligently and routinely used unnecessary force in apprehending and/or taking into custody suspects and often engaged in the gratuitous infliction of pain and punishment. Not only did Berrong not discourage such gratuitous violence, he himself actually participated in it, thus sending the message to his subordinates that such conduct was acceptable on the job.

157. Defendant Berrong negligently failed to obtain legitimate and independent investigations into claims by the public of the use of force by his subordinates. By his failure to conduct impartial investigations and to discipline those officers under his command who engaged in the use of excessive force, Berrong acquiesced in the conduct of those persons working for the Sheriff's Department and permitted a *de facto* policy which allowed the negligent use of force and/or gratuitous violence by those deputies employed by the Blount County Sheriff's Department.

158.	This culture of violence within the Blount County Sheriff's Department had existed for years, long enough for Defendant Berrong and Defendant Blount County to be aware of it.

159.	By their knowledge and failure to take measures to alter the culture of violence within the Sheriff's Department, Defendant Berrong and Defendant Blount County have negligently failed their duties and responsibilities as shields of the citizens of Blount County.

160.	Blount County negligently failed to screen, hire, train, monitor, supervise, control, assign, counsel, investigate, and discipline.

161.	Sheriff Berrong enacted policies and procedures which were approved by Blount County which resulted in the violation of Edwards' rights as established by the State of Tennessee or, in the alternative, maintained a practice of turning a blind eye to evidence and/or allegations that raised questions about the use of force within the Sheriffs Department and that that practice resulted in systematic deprivation of the rights of citizens such as Anthony Edwards which was known by Blount County. Among these polices and procedures was the practice of "coaching" of deputies by Blount County Sheriff's department personnel in a supervisory position in how to present their testimony on their Use of Force reports and in their formal statements so as to enable deputies who used force to avoid a finding of the unjustified use of force. This was done to avoid or reduce the incidences where the County would be found legally liable for the unlawful actions of deputies.

162.	Anthony Edwards was subjected to the use of unnecessary and negligent force as a result of the negligent failure of Defendants Berrong and Blount County to train, monitor, supervise, control, assign, counsel, investigate, and discipline.

163.    Mr. Edwards suffered severe physical injuries and suffered awful pain as he lay on the ground after the brutal attack by Defendant Burns and most of the last hours of his life were filled with almost unbearable pain and the knowledge that he desperately needed medical care which was not immediately provided as officers on the scene took their time calling for medical help.

164.    As a direct and proximate result of Defendants Berrong and Blount County's negligence Mr. Edwards' was injured and damages sustained.

165.    Mr. Edwards suffered severe head trauma, fractured ribs which required medical care and treatment, pain, fear and humiliation at being rendered impotent to protect himself from the injuries inflicted on him and from hearing Defendant Burns make light of his suffering by suggesting that Burns heard Edwards "snoring" when in reality Edwards was struggling to breathe due to his injuries.

**WHEREFORE** Plaintiff demands judgment against Defendants Berrong and Blount County in the amount of Twenty Five Million Dollars and No Cents ($25,000,000.00), costs of this action, reasonable attorneys fees, and pre-judgment and post-judgment interest

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues triable as of right by a jury.

**RESPECTFULLY SUBMITTED**, this the **24th** day of **July**, 2017.

**Signature of Counsel on Page 35 of 35**

**THE BOWLIN LAW FIRM P.C.**

BY:  *s/ Troy L. Bowlin, II*
      Troy L. Bowlin, II, BPR No. 025893
      Attorney for Courtney Adams and Kim
      Huskey Personal Representative of the
      Estate of Anthony Edwards
      FIRST TENNESSEE PLAZA
      800 South Gay St. Suite 2131
      Knoxville, Tennessee 37929
      troy@tblf-pc.com
      www.thebowlinlawfirm.com