## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **Courtney Adams,** as Mother and<br>Next Friend of K.E. and V.E.,<br>Minor children of Decedent, and<br>**Kim Huskey**, Mother of Decedent and<br>Personal Representative of **Estate of**<br>**Anthony Edwards**,<br><br><br>Plaintiffs,<br><br>v.<br><br>**Blount County**,<br>**Blount County Sheriff James L. Berrong**,<br>In his Official Capacity,<br>**Unidentified Supervisor** with Sheriff's<br>Department in his Individual Capacity, and Official<br>Capacity, **Deputy Jerry Burns**, In his<br>Individual and Official Capacity, and<br>Deputy **James Patty**, In his Individual<br>And Official Capacity<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.:  3:17- CV-00313<br><br>**JURY TRIAL DEMANDED** |

## ANSWER

*"Toxicology on antemortem blood is significant for methamphetamine, methadone, clonazepam, and morphine"*—Autopsy Report for Anthony Edwards, Amy Hawes, M.D. Medical Examiner, Knox County regional forensic center dated September 26, 2016.

Come now the defendants Blount County, Tennessee, Blount County Sheriff James

Berrong, in his official capacity ("Sheriff Berrong"), Unidentified Supervisor, in his official

capacity, Deputy Jerry Burns, in his official capacity ("Deputy Burns"), and James Patty, in his

official capacity ("Deputy Patty")[1], by and through counsel, and, pursuant to Rules 8 & 12 of the

---

[1] Collectively, these defendants will be referred to as "these defendants" or Blount County defendants in this *Answer* for the ease of the Court.

Federal Rules of Civil Procedure, hereby respond as follows:

As to the unnumbered "Complaint for Damages" Paragraph, these defendants admit that these Plaintiff have brought claims under both federal and state law. These defendants specifically deny that Ms. Huskey may bring any claim on behalf of Mr. Anthony Edwards and deny that these defendants may be held liable for any federal or state-law claim. As to the remaining claims, these defendants specifically provide:

1. These defendants are without sufficient information to form a belief with reference to the truth of the allegations of Paragraph No. 1, therefore strict proof is demanded.

2. These defendants are without sufficient information to form a belief with reference to the truth of the allegations of Paragraph No. 2, therefore strict proof is demanded. These defendants specifically deny that Plaintiff Huskey may bring any claim on behalf of Mr. Edwards.

3. These defendants are without sufficient information to form a belief with reference to the truth of the allegations of Paragraph No. 3, therefore strict proof is demanded.

4. The allegations in Paragraph No. 4 are admitted except that Deputy Burns does not reside in Blount County, Tennessee.

5. The allegations in Paragraph No. 5 are admitted except that Deputy Patty does not reside in Blount County, Tennessee.

6. Responding to the allegations of Paragraph No. 6, no response is required because any claim is barred by the statute of limitations, as there is no tolling statute for a "unidentified supervisor."

7. As to the allegations in Paragraph No 7, it is admitted as to defendants Burns and Patty. The allegations regarding the "unidentified supervisor" does not require a response

2

because such claim is barred by the statute of limitations.

8. Responding to the allegations of Paragraph No. 8, it is admitted that Deputy Burns and Deputy Patty have been sued in their individual and official capacities. The allegations regarding the "unidentified supervisor" does not require a response because such claim is barred by the statute of limitations.

9. The allegations in Paragraph 9 are admitted except that Blount County is not the employer of Deputy Patty. The allegations regarding the "unidentified supervisor" does not require a response because such claim is barred by the statute of limitations.

10. The allegations of Paragraph No. 10 are generally admitted.

11. The allegations of Paragraph No. 11 are generally admitted.

12. These defendants at all times did act while in performance of their official duties and under color of law. The remaining allegations of Paragraph No. 12 are denied.

13. The allegations in Paragraph No. 13 are admitted.

14 . The allegations in Paragraph No. 14 are admitted.

15. The allegations in Paragraph No. 15 are denied in that the Tennessee Governmental Tort Liability Act ("TGTLA") statutory provision that Blount County, Tennessee Circuit Court has "exclusive jurisdiction" constitutes an "exceptional circumstance" under 28 U.S.C. § 1367(c)(4).

16. The allegations in Paragraph No. 16 are denied in that the Tennessee Governmental Tort Liability Act ("TGTLA") statutory provision that Blount County, Tennessee Circuit Court has "exclusive jurisdiction" constitutes an "exceptional circumstance" under 28 U.S.C. § 1367(c)(4).

17. The allegations in Paragraph No. 17 are denied.

18.     The allegations of Paragraph No. 18 are neither admitted nor denied because the TGTLA and other Tennessee statutory provisions speak for themselves.

19.     The allegations in Paragraph 19 are admitted as to Deputies Burns and Patty. The allegations regarding the "unidentified supervisor" does not require a response because such claim is barred by the statute of limitations.

20.     The allegations of Paragraph No. 20 is a purported statement of law that speaks for itself and therefore does not require a response on the part of these defendants.

21.     The allegations of Paragraph No. 21 is a purported statement of law that speaks for itself and therefore does not require a response on the part of these defendants.

22.     The allegations of Paragraph No. 22 is a purported statement of law that speaks for itself and therefore does not require a response on the part of these defendants.

23.     The allegations of Paragraph No. 23 is a purported statement of law that speaks for itself and therefore does not require a response on the part of these defendants. However, any allegation as to any wrongdoing is denied.

24.     The allegations of Paragraph No. 24 are a purported statement of law that speaks for itself and therefore do not require a response on the part of these defendants. However, any allegation as to any wrongdoing is denied.

25.     The allegations of Paragraph No. 25 are a purported statement of law and therefore do not require a response on the part of these defendants. However, any allegation as to any wrongdoing is denied.

26.     Responding to the allegations of Paragraph No. 26, there are no violations of any constitutional rights as to these defendants.

27.     The allegations of Paragraph No. 27 are a purported statement of law and

therefore do not require a response on the part of these defendants. However, any allegation as to any wrongdoing is denied.

28.     The allegations in Paragraph No. 28 admitted that Deputy Burns observed Mr. Edwards walking with Mr. Travis Hickam after midnight on Jul 25, 2016 on Winchester Road after he had received a dispatch about three suspicious males **(including an individual with an active warrant that had previously assaulted an officer)** walking on another person's property. The remaining allegations are denied or denied as stated.

29.     The allegations in Paragraph No. 29 are denied as stated. Deputy Burns did turn around and speak with Mr. Edwards and Mr. Hickman. Deputy Burns did not "seize" them at this time.

30.     The allegations in Paragraph No. 30 are admitted that he asked for Mr. Edwards and Mr. Hickman's identification. The remaining allegations are denied or denied as stated.

31.     The allegations in Paragraph No. 31 are denied or denied as stated. Officer Burns had been advised when his shift started at "roll call" on July 24/July 25, 2016 that there was an individual with outstanding warrants who was a felon and he had assaulted an officer. This individual was known to live around the area of Winchester and Patterson Roads. During his shift, Officer Burns was advised by dispatch that there were three suspicious individuals walking through people's yards after midnight at or around the area of Winchester and Patterson Roads. Upon traveling on Winchester Road, Officer Burns observed both Mr. Edwards and Mr. Hickam walking at or around 12:50 a.m. From his patrol car and otherwise, Mr. Edwards matched the description of the individual that had the outstanding warrants.

Officer Burns, after stopping and getting out of his patrol car, did ask for the names and identification of Mr. Edwards and Mr. Hickam. Mr. Edwards did not give his correct name and

gave **"10/87/87"** as his birth date.    In addition to giving this improper date for his birthday, Mr. Edwards was acting suspicious (fidgety) and continued to grab at and put his hands in or around his pants.  Based on this, Deputy Burns asked to perform a "pat down" or investigatory stop of Mr. Edwards.

When Mr. Edwards confirmed that Deputy Burns was requesting to "pat down" Mr. Edwards, Mr. Edwards ran from Deputy Burns toward Patterson Road. Deputy Burns then chased after Mr. Edwards on foot and unsuccessfully deployed his taser at Mr. Edwards at some point.  While running, Mr. Edwards fell to the ground in a patch of grass behind a line of trees. Deputy Burns got on top of Mr. Edwards and tried to restrain Mr. Edwards.  However, Mr. Edwards resisted and was combative to Deputy Burn's efforts to handcuff and restrain Mr. Edwards and he even tried to attempt to run away several times. Deputy Burns was, at some point, able to handcuff Mr. Edwards but had to do it in the front of Mr. Edwards because of Mr. Edward's resistance and combative behavior.

Mr. Edwards continued to resist and struggle with Deputy Burns even after being handcuffed. After several minutes of Mr. Edwards resisting and being combative with Deputy Burns, Deputy Bennett arrived and helped restrain Mr. Edwards.  Once Deputy Patty arrived, Deputy Bennett went to where Mr. Travis Hickam was standing several yards away.  Soon after, Deputy Burns and Deputy Patty walked Mr. Edwards (while holding him) from the grassy area toward the patrol car of Officer Patty that was located on Winchester and near Patterson Road. When Deputy Burns let go of the person of Mr. Edwards to open the patrol car door, Mr. Edwards again ran away from him and Deputy Patty and toward Patterson Road.  Deputy Burns caught Mr. Edwards and grabbed him by the waist.  After grabbing him by the waist, Mr. Edwards kicked Deputy Patty in the "groin" while Deputy Burns was holding Mr. Edwards by

the waist.  Due to Mr. Edwards's continued resistance, Mr. Edwards was taken or otherwise fell on the pavement.

At the time of this incident, Mr. Edwards had active warrants for his arrest related to the domestic abuse of Plaintiff Courtney Adams.  Mr. Edwards indicated to Mr. Hickam directly before Deputy Burns that he was going to run from Deputy Burns due to this active warrant because he did not want to be arrested.  During his interaction with Deputy Burns, Mr. Edwards was under the influence of methamphetamine, methadone, clonazepam and morphine in his system.  Due to this cocktail of illegal drugs, Mr. Edwards was combative with and able to resist Deputy Burns trying to restrain Mr. Edwards.

32.     The allegations in Paragraph 32 are denied or denied as stated.  It is specifically denied that Deputy Burns raised Mr. Edwards up and "violently slammed" Mr. Edward's head onto the concrete pavement.  As to the body cameras, it is specifically denied any allegations regarding wrongdoing regarding the body cameras. Any absence of recording on these tapes was due to Deputy Burns' body camera falling off during the encounter with Mr. Edwards.  As to the audio on the video, the video speaks for itself about what Mr. Edwards may have said while on multiple illegal substances.  However, it is specifically denied Mr. Edwards was having a seizure, that Deputy Burns intentionally hurt Mr. Edwards, that Deputy Burns hit Mr. Edwards in the face, that Deputy Burns beat Mr. Edwards, or that Mr. Edwards took any wrongful action that caused Mr. Edwards to fear for his life.

33.     The allegations in Paragraph No. 33 are denied or denied as stated.

34.     The allegations in Paragraph No. 34 are neither denied nor admitted because the audio speaks for itself.  To the extent that these averments support any wrongdoing, the allegations are denied or denied as stated.

35. The allegations in Paragraph 35 are neither denied nor admitted because the audio speaks for itself. To the extent that these averments support any wrongdoing, the allegations are denied or denied as stated.

36. To the extent that the allegations in Paragraph 36 supports any wrongdoing by these defendants, the allegations in Paragraph 36 are denied or denied as stated. The ambulance was contacted along with Lifestar immediately after the incident with Mr. Edwards. None of these defendants are responsible for any supposed delay.

37. Responding to the allegations of Paragraph No. 37, the allegations are neither admitted nor denied because the autopsy speaks for itself. In addition to the allegations in Paragraph No. 37, the autopsy indicated that Mr. Edwards had several illegal drugs in his system. As to the injuries to his ribs, Mr. Edwards ribs were injured due to Plaintiff Courtney Adams running over him with a vehicle two or three times earlier this day and before Plaintiff Adams drove Mr. Edwards to the house of Mr. Travis Hickam. Likewise, the manner of death is a legal conclusion that does not require a response.

38. These defendants deny any allegations in Paragraph No. 38 are denied to the extent that these defendants acted wrongfully. As to the amounts of medical bills and other expenses, these defendants are without sufficient information or knowledge to form a belief as to these allegations.

39. The allegations in Paragraph No. 39 are denied as to any wrongdoing or that these defendants owe anything to any person. Likewise, it is denied that the Substantive Due Process standard under the Fourteenth Amendment would apply to the facts of this case. The Fourth Amendment controls.

40. The allegations in Paragraph No. 40 are denied to the extent that these defendants

should be entitled to any compensation.

41.     The allegations of Paragraph No. 41 are meaningless and do not require a response because they have previously been answered.

42.     As to the allegations in Paragraph No. 42, it is admitted that these defendants, Officer Burns and Officer Patty operated under color of law.

43.     Responding to the allegations of Paragraph No. 43, there was no unlawful seizure or false arrest.

44.     The allegations in Paragraph No. 44 are denied.

45.     The allegations in Paragraph No. 45 are denied.

46.     Responding to the allegations of Paragraph No. 46, at all times Officer Burns did not violate any constitutional right of Mr. Edwards.

47.     The allegations in Paragraph No. 47 are denied. No defendant violated any constitutional right and/or any "clearly established" constitutional right of Mr. Edwards based on the "particularized facts of this case."

48.     The allegations of Paragraph No. 48 are denied and denied to the extent that they allege that any defendant committed any unconstitutional conduct. Furthermore, there was an outstanding felony warrant for Mr. Edwards arrest.

49.     The allegations of Paragraph No. 49 are denied or denied as stated. Of importance, there was an outstanding felony warrant for Mr. Edwards and apparently, this along with his drug induced state caused him to act the way he acted that night.

50.     The allegations in Paragraph No. 50 are denied or denied as stated.

51.     The allegations in Paragraph No. 51 are denied.

52.     The allegations in Paragraph No. 52 are denied. As to the **"WHEREFORE"**

Paragraph, these allegations are denied.

53.     The allegations of Paragraph No. 53 are meaningless and do not require a response on the part of these defendants because they have previously been answered.

54.     The allegations of Paragraph No. 54 are a purported statement of law and do not require a response on the part of these defendants.

55.     The allegations in Paragraph No. 55 are denied.

56.     The allegations of Paragraph No. 56 are denied or denied as stated. As to statement on the audio, the audio speaks for itself. It is specifically denied that Deputy Burns picked Mr. Edwards up and slammed his head and body onto the concrete pavement in an unconstitutional manner. Regarding the last attempt of Mr. Edwards to break the hold of Deputy Burns and flee, Deputy Burns grabbed Mr. Edwards around the waist as Mr. Edwards fled. After grabbing him, Mr. Edwards continued to struggle with Deputy Burns and subsequently kicked Officer Patty in the groin area. Mr. Edwards was then taken to the ground by Deputy Burns in an effort to control the situation and protect himself, Mr. Edwards, and the other officers due to Mr. Edwards' combative, belligerent behavior.

57.     The allegations in Paragraph No. 57 are denied or denied as stated.

58.     The allegations in Paragraph No. 58 are denied.

59.     The allegations in Paragraph No. 59 are denied.

60.     Responding to the allegations of Paragraph No. 60, none of the actions of the any defendant was unconstitutional or violated any "clearly established" constitutional right. Mr. Edwards brought his own demise about due to his combative, belligerent and uncooperative behavior. Had Mr. Edwards complied with the officer's reasonable requests, all of the struggles, fights and ultimately the demise of Mr. Edwards would have been avoided.

61.     The allegations in Paragraph No. 61 are denied.

62.     The allegations in Paragraph No. 62 are denied or denied as stated.

63.     The allegations in Paragraph No. 63 are denied or denied as stated to the extent that their actions were unconstitutional.  Mr. Travis Hickam and Mr. Edwards had been engaged in illegal conduct taking illegal drugs, had drug paraphernalia on their person, and Mr. Edwards knew that he had an active warrant for his arrest.   In addition, Mr. Edwards and Mr. Hickam both were walking in the dark in a high crime area between 12:30 and 1:00 a.m. after Deputy Burns had received a dispatch that three suspicious persons were walking on private property of others.

64.     The allegations in Paragraph No. 64 are denied or denied as stated.

65.     The allegations in Paragraph No. 65 are denied or denied as stated.

66.     Responding to the allegations of Paragraph No.  66, the allegations are denied or denied as stated.

67.     The allegations in Paragraph No. 67 are denied or denied as stated.  It is specifically denied that any defendant used any excessive force.  As to the response by the ambulance or LifeStar, no defendant was responsible for any supposed delay.

68.     Responding to the allegations of Paragraph No.  68, the allegations are neither admitted nor denied because the autopsy speaks for itself.  In addition to the allegations in Paragraph No. 68, the autopsy indicated that Mr. Edwards had several illegal drugs in his system.  As to the injuries to his ribs, Mr. Edwards ribs were injured due to Plaintiff Courtney Adams running over him with a vehicle two or three times earlier this day and before Plaintiff Adams drove Mr. Edwards to the house of Mr. Travis Hickam. Likewise, the manner of death is a legal conclusion that does not require a response.  In addition, there was no excessive force used on

Mr. Edwards. The only force that was used was reactionary in nature based on Mr. Edwards own continued heightening of the combative situation and violence toward the officers and his belligerence.

69. These defendants deny any allegations in Paragraph No. 69 to the extent that any defendant acted wrongfully. As to the amounts of medical bills and other expenses, these defendants are without sufficient information or knowledge to form a belief as to these allegations.

70. To the extent that the averments allege that any defendant committed any wrongful act that caused Mr. Edward's injuries, the allegations in Paragraph No. 70 are denied.

71. The allegations in Paragraph No. 71 are denied. The **"WHEREFORE"** Paragraph is denied.

72. Responding to the allegations of Paragraph No. 72, These allegations are meaningless and do not require a response on the part of these defendants.

73. The allegations in Paragraph No. 73 are neither denied nor admitted because they are purported statements about the law.

74. Responding to the allegations of Paragraph No. 74, all allegations as to wrongdoing as to these defendants are denied.

75. The allegations of Paragraph No. 75 call for a legal conclusion and do not require a response on the part of these defendants.

76. Responding to the allegations of Paragraph No. 76, at all times the officers properly completed their reports. To the extent that a report is mandatory under the Federal Constitution, this allegation is neither admitted nor denied because it calls for a legal conclusion.

77. The allegations in Paragraph No. 77 are denied.

78.     The allegations in Paragraph No. 78 are denied.

79.     The allegations in Paragraph No. 79 are denied.

80.     The allegations in Paragraph No. 80 are denied.  The allegations in the

**"WHEREFORE"** paragraph are specifically denied.

81.     The allegations of Paragraph No.  81 are meaningless and do not require a

response on the part of these defendants.

82.     The allegations in Paragraph 82 are denied or denied as stated.

83.     To the extent a response is required by these defendants, the allegations in

Paragraph No. 83 regarding any alleged wrongdoing as to any defendant are denied.

84.     To the extent a response is required by these defendants, the allegations in

Paragraph No. 84 are denied.

85.     To the extent a response is required by these defendants, the allegations in

Paragraph No. 85 are denied as to any alleged wrongdoing by any defendant. As to what is on

the audio, these allegations are neither admitted nor denied because the audio speaks for itself.

86.     To the extent a response is required by these defendants, the allegations in

Paragraph No. 86 are denied.

87.     The allegations in Paragraph 87 are denied.

88.     The allegations in Paragraph 88 are denied.

89.     The allegations in Paragraph No. 86 are denied.  It is admitted that Deputy Burns

and Patty were justified in their use of force on Mr. Edwards.

90.     The allegations in Paragraph No. 90 are denied. Mr. Edwards "paid with his life"

for his own criminal conduct on the night in question.  There were no constitutional violations

whatsoever on the part of any defendant.

91. The allegations of Paragraph No. 91 do not require a response because there is no such thing as an unidentified supervisor in that the statute of limitations has run as to that alleged unidentified supervisor. However, any allegations of wrongdoing throughout this lawsuit are denied.

92. The allegations in Paragraph No. 92 are denied. The allegations in the **"WHEREFORE"** paragraph are specifically denied.

93. These defendants neither admit nor deny allegations in Paragraph 93 because they are meaningless or otherwise been answered.

94. The allegations in Paragraph No. 94 are denied to the extent Plaintiff avers that Defendant Berrong engaged in any wrongful doing.

95. The allegations in Paragraph No. 95 are denied or denied as stated.

96. The allegations in Paragraph No. 96 are denied or denied as stated.

97. The allegations in Paragraph No. 97 are denied or denied as stated. It is specifically deny that there is any past litigation or complaints that would support any governmental entity liability claim.

98. The allegations in Paragraph No. 98 are denied or denied as stated.

99. The allegations in Paragraph No. 99 are denied or denied as stated. It is specifically deny that there is a "culture of violence."

100. The allegations in Paragraph No. 100 are denied or denied as stated. These defendants specifically deny any wrongdoing by them and specifically deny that there is any past litigation that would support any governmental entity liability claim.

101. The allegations in Paragraph No. 101 are denied.

102. The allegations in Paragraph No. 102 are denied.

103.    The allegations in Paragraph No. 103 are denied or denied as stated.

104.    The allegations in Paragraph No. 104 are denied.

105.    The allegations in Paragraph No. 105 are denied or denied as stated.  The allegations in the **"WHEREFORE"** paragraph are specifically denied.

106.    These defendants neither admit nor deny allegations in Paragraph No. 106 because they are meaningless or otherwise been answered.

107.    The allegations in Paragraph No. 107 are denied or denied as stated.

108.    The allegations in Paragraph No. 108 are denied as to whether these defendants violated any constitutional right and/or clearly established constitutional right of Mr. Edwards.

109.    The allegations in Paragraph No. 109 are denied.

110.    The allegations in Paragraph No. 110 are denied as to whether these defendants wrongfully caused his injuries.

111.    The allegations in Paragraph No. 111 are denied.

112.    The allegations in Paragraph No. 112 are denied.

113.    The allegations in Paragraph No. 113 are neither admitted nor denied regarding the amount of certain medical bills.  Any allegations of any wrongdoing by any defendant are specifically denied. The allegations in the **"WHEREFORE"** Paragraph are denied.

114.    These defendants neither admit nor deny allegations in Paragraph No. 114 because they are meaningless or otherwise been answered.

115.    The allegations in Paragraph No. 115 are denied.

116.    The allegations in Paragraph No. 116 are neither admitted nor denied because they are a purported principle of law that requires no response.

117.    The allegations in Paragraph No. 117 are denied.

118. The allegations in Paragraph No. 118 are denied.

119. The allegations in Paragraph No. 119 are denied.

120. The allegations in Paragraph No. 120 are denied.

121. The allegations in Paragraph No. 121 are neither admitted nor denied regarding the amount of certain medical bills. Any allegations of any wrongdoing by any defendants are specifically denied. The allegations in the **"WHEREFORE"** Paragraph are denied.

122. These defendants neither admit nor deny allegations in Paragraph No. 122 because they are meaningless or otherwise been answered.

123. The allegations in Paragraph No. 123 are denied.

124. The allegations in Paragraph No. 124 are denied.

125. The allegations in Paragraph No. 125 are denied.

126. The allegations in Paragraph No. 126 are denied.

127. The allegations in Paragraph No. 127 are neither admitted nor denied regarding the amount of certain medical bills. Any allegations of any wrongdoing by any defendants are specifically denied.

128. The allegations in Paragraph No. 128 are denied or denied as stated. Deputy Burns and Deputy Patty called for medical help immediately after this incident.

129. The allegations in Paragraph No. 129 are denied. The allegations in the **"WHEREFORE"** Paragraph are denied.

130. These defendants neither admit nor deny allegations in Paragraph No. 130 because they are meaningless or otherwise been answered.

131. The allegations in Paragraph No. 131 are denied.

132. The allegations in Paragraph No. 132 about what is on the audio recording are

neither admitted nor denied because the audio speaks for itself. These defendants deny any wrongdoing or that Deputy Burns "snickered" about the encounter.

133. The allegations in Paragraph No. 133 are neither admitted nor denied regarding the amount of certain medical bills. Any allegations of any wrongdoing by any defendant are specifically denied.

134. The allegations in Paragraph No. 134 are denied. The allegations in the **"WHEREFORE"** Paragraph are denied.

135. These defendants neither admit nor deny allegations in Paragraph No. 135 because they are meaningless or otherwise been answered.

136. The allegations in Paragraph No. 136 are denied.

137. The allegations in Paragraph No. 137 regarding what is on recordings is neither admitted nor denied because the recordings speak for themselves. These defendants specifically deny any wrongdoing by any defendant.

138. The allegations in Paragraph No. 138 are denied.

139. The allegations in Paragraph No. 139 are denied.

140. The allegations in Paragraph No. 140 are denied.

141. The allegations in Paragraph No. 141 are denied.

142. The allegations in Paragraph No. 142 are denied.

143. The allegations in Paragraph No. 143 are neither admitted nor denied regarding what can be heard on the recordings because the recordings speak for themselves. These defendants specifically deny any wrongdoing.

144. The allegations in Paragraph No. 144 are neither admitted nor denied regarding the amount of certain medical bills. Any allegations of any wrongdoing by any defendant are

specifically denied.

145.	The allegations in Paragraph No. 145 are denied.  The allegations in the **"WHEREFORE"** Paragraph are denied.

146.	These defendants neither admit nor deny allegations in Paragraph No. 146 because they are meaningless or otherwise been answered.

147.	The allegations in Paragraph No. 147 are neither admitted nor denied because it provides a purported statement of the law.

148.	The allegations in Paragraph No. 148 are denied.

149.	The allegations in Paragraph No. 149 are denied.

150.	The allegations in Paragraph No. 150 are denied.

151.	The allegations in Paragraph No. 151 are denied.

152.	The allegations in Paragraph No. 152 are neither admitted nor denied regarding the amount of certain medical bills.  Any allegations of any wrongdoing by any defendant are specifically denied. The allegations in the **"WHEREFORE"** Paragraph are denied.

153.	These defendants neither admit nor deny allegations in Paragraph No. 153 because they are meaningless or otherwise been answered.

154.	These defendants neither admit nor deny allegations in Paragraph No. 154 do not pertain to them.

155.	The allegations in Paragraph No. 155 are denied to the extent Plaintiff asserts Defendant Berrong engaged in any wrongdoing.

156.	The allegations in Paragraph No. 156are denied.  It is specifically denied that there is any "past litigation, complaint, and incidences" that supports any negligence claim.

157.	The allegations in Paragraph No. 157 are denied.

158.    The allegations in Paragraph No. 158 are denied.

159.    The allegations in Paragraph No. 159 are denied.

160.    The allegations in Paragraph No. 160 are denied.

161.    The allegations in Paragraph No. 161 are denied.

162.    The allegations in Paragraph No. 162 are denied.

163.    The allegations in Paragraph No. 163 are denied.

164.    The allegations in Paragraph No. 164 are denied.

165.    The allegations in Paragraph No. 165 are denied or denied as stated.  The allegations in the **"WHEREFORE"** Paragraph are denied.

166.    Ms. Kim Huskey may not bring any claim under 42 U.S.C. § 1983 or any state-law claim because she is not the proper representative to bring such a claim because the children of Mr. Edwards by next of friend Courtney Adams has brought these claims.  Tenn. Code Ann. § 20-5-106; Tenn. Code Ann. § 20-5-107; Foster v. Jeffers, 813 S.W.2d 449, 451 (Tenn. Ct. App. 1991) (citing Busby v. Massey, 686 S.W.2d 60 (1984)).[2]  Likewise, Ms. Huskey has no independent claim under 42 U.S.C. § 1983 or for any state-law claim because the substantive law does not grant one a right to bring a claim for loss of consortium or any type of claim.  Pierce v. Stinson, 493 F. Supp. 609, 611 (E.D. Tenn. 1979) (citing Hall v. Wooten, 506 F.2d 564, 566 (6th Cir. 1974)).  As such, Ms. Huskey should be dismissed.

167.    Any federal or state-law claim against any unnamed supervisor or unidentified supervisor is barred by the statute of limitations because the statute of limitations period is not tolled by filing a claim against a fictitious party.  Cox v. Treadway, 75 F.3d 230, 240 (6th Cir.

---

[2] These defendants are not stating that the children may not bring any 42 U.S.C. § 1983 on the behalf of Mr. Edwards.  These defendants are merely providing that Ms. Huskey is not the proper person to bring the claim because the children have brought the claim.

1996); Parker v. Henderson, 450 F.Supp.2d 842, 856 (W.D. Tenn. 2006); Cross v. City of Chattanooga, No. 1:04-cv-108, 2005 U.S. Dist. LEXIS 34036, at * 34-36 (E.D. Tenn. Oct. 3, 2005).

168.    Any federal or state-law claims against the persons in their official capacity should be dismissed because such claims are against defendant Blount County. Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159 (1985); Matthew v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994); Lee v. Metro. Gov't of Nashville, No. 3:06-0108, 2008 U.S. Dist. LEXIS 12956, at *31 n.5 (M.D. Tenn. Feb. 21, 2008) (citing Cox v. State, 399 S.W.2d 776 (Tenn. 1965)).

169.    Any claim that a cause of action may be brought against any defendant under federal law because of any purported removal of immunity under state law is improper because the removal of immunity under state law has no applicability to whether an individual defendant may be held liable for a 42 U.S.C. § 1983 claim.

170.    Any claim against the Fourteenth Amendment for excessive force or wrongful arrest should be dismissed because such claims would be governed by the Fourth Amendment. Graham v. Connor, 490 U.S. 490 U.S. 386, 393-97 (1989).

171.    Defendant Blount County is entitled to be dismissed for any 42 U.S.C. § 1983 claim for unlawful arrest or other seizure because no Blount County official violated any constitutional right of Mr. Edwards.  To the extent that these defendants does not have immunity for an unlawful arrest claim under state law, these defendants should not be held liable based on the facts of this case. Deputy Burns and Deputy Patty had proper cause to seize Mr. Edwards and eventually had probable cause to arrest Mr. Edwards for several violations of Tennessee law based on the undisputed material facts of this case.

Officer Burns had been advised when his shift started at "roll call" on July 24/July 25, 2016 that there was an individual with outstanding warrants who was a felon and he had assaulted an officer. This individual was known to live around the area of Winchester and Patterson Roads. During his shift, Officer Burns was advised by dispatch that there were three suspicious individuals walking through people's yards after midnight at or around the area of Winchester and Patterson Roads. Upon traveling on Winchester Road, Officer Burns observed both Mr. Edwards and Mr. Hickam walking at or around 12:50 a.m. From his patrol car and otherwise, Mr. Edwards matched the description of the individual that had the outstanding warrants.

Officer Burns, after stopping and getting out of his patrol car, did ask for the names and identification of Mr. Edwards and Mr. Hickam. Mr. Edwards did not give his correct name and gave **"10/87/87"** as his birth date. In addition to giving this improper date for his birthday, Mr. Edwards was acting suspicious (fidgety) and continued to grab at and put his hands in or around his pants. Based on these circumstances, Deputy Burns asked to perform a "pat down" or investigatory stop of Mr. Edwards.

When Mr. Edwards confirmed that Deputy Burns was requesting to "pat down" Mr. Edwards, Mr. Edwards ran from Deputy Burns toward Patterson Road. Deputy Burns then chased after Mr. Edwards on foot and unsuccessfully deployed his taser at Mr. Edwards at some point. While running, Mr. Edwards fell to the ground in a patch of grass behind a line of trees. Deputy Burns got on top of Mr. Edwards and tried to restrain Mr. Edwards. However, Mr. Edwards resisted and was combative to Deputy Burn's efforts to handcuff and restrain Mr. Edwards and he even tried to attempt to run away several times. Deputy Burns was, at some point, able to handcuff Mr. Edwards but had to do it in the front of Mr. Edwards because of Mr.

Edward's resistance and combative behavior.

Mr. Edwards continued to resist and struggle with Deputy Burns even after being handcuffed. After several minutes of Mr. Edwards resisting and being combative with Deputy Burns, Deputy Bennett arrived and helped restrain Mr. Edwards. Once Deputy Patty arrived, Deputy Bennett went to where Mr. Travis Hickam was standing several yards away. Soon after, Deputy Burns and Deputy Patty walked Mr. Edwards (while holding him) from the grassy area toward the patrol car of Officer Patty that was located on Winchester and near Patterson Road. When Deputy Burns let go of the person of Mr. Edwards to open the patrol car door, Mr. Edwards again ran away from him and Deputy Patty and toward Patterson Road. Deputy Burns caught Mr. Edwards and grabbed him by the waist. After grabbing him by the waist, Mr. Edwards kicked Deputy Patty in the "groin" while Deputy Burns was holding Mr. Edwards by the waist. Due to Mr. Edwards's continued resistance, Mr. Edwards was taken to or otherwise fell on the pavement.

At the time of this incident, Mr. Edwards had active warrants for his arrest related to the domestic abuse of Plaintiff Courtney Adams. Mr. Edwards indicated to Mr. Hickam directly before Deputy Burns that he was going to run from Deputy Burns due to this active warrant because he did not want to be arrested. During his interaction with Deputy Burns, Mr. Edwards was under the influence of methamphetamine, methadone, clonazepam and morphine in his system. Due to this cocktail of illegal drugs, Mr. Edwards was combative with and able to resist Deputy Burns trying to restrain Mr. Edwards.

As shown above, Deputy Burns had sufficient cause to perform a consensual contact with Mr. Edwards when he made contact with Mr. Edwards and Mr. Hickam for they were walking on a public roadway around 12:53 p.m. near an area where there was reported suspicious activity

and due to Mr. Edwards looking similar to person who was wanted. In addition, due to Mr. Edwards suspicious behavior and he giving wrongful identification information after Deputy Burns made the consensual contact, Deputy Burns had sufficient cause to perform an "investigatory stop." When Mr. Edwards ran away as Deputy Burns asked to perform a "pat-down" of Mr. Edwards, Deputy Burns had probable cause to arrest Mr. Edwards for evading arrest, criminal impersonation, and obstruction of justice by giving a false name. When Mr. Edwards continued to resist arrest after he sprinted away and while Deputy Burns struggled with Mr. Edwards for several minutes, Deputy Burns had probable cause to arrest Mr. Edwards for resisting arrest. In addition, Deputy Burns and Deputy Patty had probable cause to arrest Mr. Edwards for assault of an officer and resisting arrest due to Mr. Edwards again running from the officers and due to him kicking Deputy Patty in the groin.

Accordingly, these defendants may not be held liable for any unlawful arrest claim under federal or state law because Mr. Edwards was lawfully arrested.

172.    These defendants are entitled to be dismissed as to any 42 U.S.C. § 1983 claim for excessive force because no Blount County official committed any underlying constitutional violation. These defendants are also entitled to be dismissed for any assault/battery claim under state-law. These defendants did not use excessive force or otherwise assault/battery Mr. Edwards because their use of force against Mr. Edwards was "objectively reasonable" based on the undisputed material facts of this case.

Officer Burns had been advised when his shift started at "roll call" on July 24/July 25, 2016 that there was an individual with outstanding warrants who was a felon and he had assaulted an officer. This individual was known to live around the area of Winchester and Patterson Roads. During his shift, Officer Burns was advised by dispatch that there were three

suspicious individuals walking through people's yards after midnight at or around the area of Winchester and Patterson Roads. Upon traveling on Winchester Road, Officer Burns observed both Mr. Edwards and Mr. Hickam walking at or around 12:50 a.m. From his patrol car and otherwise, Mr. Edwards matched the description of the individual that had the outstanding warrants.

Officer Burns, after stopping and getting out of his patrol car, did ask for the names and identification of Mr. Edwards and Mr. Hickman. Mr. Edwards did not give his correct name and gave **"10/87/87"** as his birth date. In addition to giving this improper date for his birthday, Mr. Edwards was acting suspicious (fidgety) and continued to grab at and put his hands in or around his pants. Based on these circumstances, Deputy Burns asked to perform a "pat down" or investigatory stop of Mr. Edwards.

When Mr. Edwards confirmed that Deputy Burns was requesting to "pat down" Mr. Edwards, Mr. Edwards ran from Deputy Burns toward Patterson Road. Deputy Burns then chased after Mr. Edwards on foot and unsuccessfully deployed his taser at Mr. Edwards at some point. While running, Mr. Edwards fell to the ground in a patch of grass behind a line of trees. Deputy Burns got on top of Mr. Edwards and tried to restrain Mr. Edwards. However, Mr. Edwards resisted and was combative to Deputy Burn's efforts to handcuff and restrain Mr. Edwards and he even tried to attempt to run away several times. Deputy Burns was, at some point, able to handcuff Mr. Edwards but had to do it in the front of Mr. Edwards because of Mr. Edward's resistance and combative behavior.

Mr. Edwards continued to resist and struggle with Deputy Burns even after being handcuffed. After several minutes of Mr. Edwards resisting and being combative with Deputy Burns, Deputy Bennett arrived and helped restrain Mr. Edwards. Once Deputy Patty arrived,

Deputy Bennett went to where Mr. Travis Hickam was standing several yards away. Soon after, Deputy Burns and Deputy Patty walked Mr. Edwards (while holding him) from the grassy area toward the patrol car of Officer Patty that was located on Winchester and near Patterson Road. When Deputy Burns let go of the person of Mr. Edwards to open the patrol car door, Mr. Edwards again ran away from him and Deputy Patty and toward Patterson Road. Deputy Burns caught Mr. Edwards and grabbed him by the waist. After grabbing him by the waist, Mr. Edwards kicked Deputy Patty in the "groin" while Deputy Burns was holding Mr. Edwards by the waist. Due to Mr. Edwards's continued resistance, Mr. Edwards was taken to or otherwise fell on the pavement.

At the time of this incident, Mr. Edwards had active warrants for his arrest related to the domestic abuse of Plaintiff Courtney Adams. Mr. Edwards indicated to Mr. Hickam directly before Deputy Burns that he was going to run from Deputy Burns due to this active warrant because he did not want to be arrested. During his interaction with Deputy Burns, Mr. Edwards was under the influence of methamphetamine, methadone, clonazepam and morphine in his system. Due to this cocktail of illegal drugs, Mr. Edwards was combative with and able to resist Deputy Burns trying to restrain Mr. Edwards.

Based on these undisputed material facts, these defendants' use of force against Mr. Edwards was "objectively reasonable." After violating the law by giving false information to Deputy Burns, Mr. Edwards evaded arrest by running away from Deputy Burns. Deputy Burn unsuccessfully deploying his taser and then getting on top of Mr. Edwards in an attempt to detain him is not "objectively reasonable" based on Mr. Edwards' actions. When Deputy Burns continued to struggle with Deputy Burns while behind the tree line, Deputy Burn's use of force was "objectively reasonable" because Mr. Edwards was continuing to attempt to evade arrest and

actively resisting arrest despite Deputy Burns efforts to safely control him. Deputy Burns handcuffing Mr. Edwards was "objectively reasonable" because such restraints were necessary considering Mr. Edwards' resistance and attempts to evade arrest. Deputy Burns and Deputy Patty's use of soft-hands in taking Mr. Edwards toward the vehicle of Deputy Patty was "objectively reasonable." Lastly, Deputy Burns taking Mr. Edwards to the ground or them otherwise falling to the ground is "objectively reasonable" based on the multiple criminal laws Mr. Edwards had violated, Mr. Edwards attempting to evade arrest, him actively resisting the officers, and him assaulting Deputy Patty.

Based on these undisputed material facts, these defendants may not be held liable for any federal excessive force claim or any state-law assault/battery claim for the use of force against Mr. Edwards was "objectively reasonable."

173.     Defendants deny that a civil conspiracy claim has been brought against them. To the extent that there has been, these defendants may not be held liable for any claim of conspiracy under 42 U.S.C. § 1983 related to the use of force or anything related to reports. These defendants dispute that there was any wrongdoing or inconsistency as to the preparation of any reports. To the extent that there is some alleged inconsistency, the reports or other actions do not support there was any action that would support a constitutional violation as to the preparation of reports. In addition, Plaintiff has not alleged sufficient facts to support a claim for civil conspiracy under 42 U.S.C. § 1983 because Plaintiff has not alleged sufficient factual allegations and cannot support that there was an agreement between two or more persons to deprive Mr. Edwards of any constitutional right or that he was deprived a constitutional right due to such alleged wrongful overt act(s) pursuant to this conspiracy. Plaintiff has not alleged and cannot support that any defendant took an action in furtherance of this conspiracy or that Mr.

Edwards was injured because of any alleged conspiracy. The defendants and other officers made their reports truthfully. Any alleged inconsistency is merely just a minor inconsistency that does not support that any defendant acted wrongfully. Thus, under 42 U.S.C. § 1983, these defendants submit that they should be dismissed as to any civil conspiracy claim.

174. These defendants should be dismissed for any claim under 42 U.S.C. § 1983 because defendant Blount County did not have any policy, practice, or custom that caused any alleged constitutional right. City of Canton v. Harris, 489 U.S. 378, 388 (1989); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). In addition, these defendants should be dismissed for any 42 U.S.C. § 1983 claim under a theory of a failure to train or supervise because defendant Blount County did not have any inadequate training, it was not deliberately indifferent to any alleged in adequate training, and it did not have inadequate training that caused any alleged constitutional violation. City of Canton, 489 U.S. at 388; Marcilis v. Township of Redford, 693 F.3d 589, 605 (6th Cir. 2012) (citing Ellis v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006)).

175. Any "wrongful death" claim as a separate, independent claim should be dismissed because it superfluous to the other state-law claims.

176. These defendants enjoy immunity for any state-law claim for battery and false arrest because they have immunity because these claims are not negligence claims and the TGTLA specifically grants immunity for claims that arise out of a false arrest or civil rights claim. Tenn. Code Ann. § 29-20-205.

177. These defendants may not be held liable for any negligence claim or any alleged negligent use of force. Negligence does not support a claim under 42 U.S.C. § 1983. Negligent use of force is not cognizable under state-law. To the extent that Plaintiff has brought a negligence claim, these defendants should not be held liable because the factual allegations do no

support a claim for "negligent use of force" and/or negligent supervision or training. Lastly, these defendants may not be held liable for any use of force under any theory because the use of force and other actions in this case were justified and "objectively reasonable" based on the circumstances of this case.

178.    Any claim under the Sheriff's Statute, Tenn. Code Ann. § 8-8-302, does not support that these defendants may be held liable because the claims against them are either governed by the TGTLA and Plaintiff cannot support that any defendant did anything wrongfully toward Plaintiff.

179.    Plaintiff may not recover more than $300,000 for any claim under the TGTLA because such claims are statutorily capped at $300,000. Tenn. Code Ann. § 29-20-403(b)(4).

180.    Plaintiff has not stated a claim under Count IX for "pre-death, pain, and suffering" because this not a cognizable claim but is merely an element of damages.

181.    Plaintiff should not recover any punitive damages against these defendants because punitive damages are barred as a matter of law under both federal and state law. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267–68, 101 (1981); Defoe ex rel. Defoe v. Spiva, 566 F. Supp. 2d 748 (E.D. Tenn. 2008); Tipton County Board of Education v. Dennis, 561 S.W.2d 148 (Tenn. 1978).

182.    Expressly, these defendants may not be held liable for any state-law false arrest or assault/battery claim based on the analysis that has been set forth extensively regarding the 42 U.S.C. § 1983 claims for unlawful arrest and excessive force.

183.    To the extent that the state-law claims are not dismissed with prejudice, the state-law claims should be dismissed for lack of jurisdiction under 28 U.S.C. § 1367 because the exclusivity provision of the TGTLA constitutes an exceptional circumstance sufficient to deny

28

jurisdiction in the event that the claims are not dismissed with prejudice.

184. These defendants aver that Counts V through XII should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. These defendants have prepared a lengthy Motion in support of the averment that these Counts should be dismissed, but pursuant to the Court's Local Rule, this Motion has been submitted to plaintiff's counsel to allow the opportunity to amend the Complaint, if counsel so chooses. These defendants aver that they are entitled to dismissal and reserve in this Answer the right to make a detailed and formal Motion after the parties have complied with the Court's Local Rule.

Respectfully submitted this 22nd day of September, 2017.

s\Craig L. Garrett
Craig L. Garrett, BPR #010227
*Attorney for Defendants Blount County,*
*Blount County Sheriff James L. Berrong in*
*his official capacity, Unidentified Supervisor*
*in his official capacity, Deputy Jerry Burns*
*in his official capacity, and Deputy James*
*Patty in his official capacity*
607 Smithview Drive
Maryville, Tennessee 37803
(865) 984-8200

CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2017 a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

s\Craig L. Garrett