## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **COURTNEY ADAMS,** as Mother and<br>Next Friend of **K.E.** and **V.E.,**<br>minor children of Decedent, and<br>**KIM HUSKEY,** Mother of Decedent and<br>Personal Representative of **ESTATE OF**<br>**ANTHONY EDWARSDS,**<br>     **Plaintiffs,**<br><br>**v.**<br><br>**BLOUNT COUNTY,**<br>**BLOUNT COUNTY SHERIFF**<br>**JAMES L. BERRONG,** In His Official Capacity**,**<br>**LIEUTENANT SCOTT BOYD,** in his Individual<br>Capacity and Official Capacity,<br>**DEPUTY JERRY BURNS,** In his<br>Individual and Official Capacity, and<br>**DEPUTY JAMES PATTY,** In His Individual<br>Capacity and  Official Capacity,<br>     **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.: 3:17-CV-00313<br><br>JURY TRIAL DEMANDED |

**"[T]he cause of death is blunt force injuries to the head.**
**The manner of death is homicide."**

*Autopsy Report for Anthony Edwards, Amy Hawes, MD, Medical Examiner,*
*Knox County Regional Forensic Center dated September 26, 2016*

## AMENDED COMPLAINT FOR DAMAGES

**COMES NOW**, Courtney Adams as Mother and Next Friend of K.E. and V.E., the Minor

Children of Anthony Edwards, Deceased, and Kim Huskey as Personal Representative of the

Estate of Anthony Edwards by and through undersigned counsel, and files this Complaint against

the Defendants, Blount County, a governmental entity, and individual Defendants Deputy Jerry

Burns ("Deputy Burns"), and Deputy James Patty ("Deputy Patty") pursuant to 42 U.S.C. § 1983,

42 U.S.C. § 1988, The Constitution of the United States and the Laws of the State of Tennessee.

## PARTIES

### I.  PLAINTIFF

1.      At all times material hereto, Plaintiff Courtney Adams was the biological mother of K.E. and V.E., who are the Minor Children of Anthony Edwards, Decedent. At the time of Mr. Edwards' death Plaintiff Courtney Adams was not married to Anthony Edwards. Plaintiff Courtney Adams resides in Sevier County, Tennessee.

2.      Plaintiff Kim Huskey is the mother of Decedent Anthony Edwards and the Personal Representative of his Estate. Edwards Plaintiff Kim Huskey resides in Blount County, Tennessee.

3.      At the times material hereto, Decedent Anthony Edwards was a citizen of the United States residing at 955 Jamesena Miller Dr. Pigeon Forge, Tennessee 37863 in Sevier County.

### II.  DEFENDANTS

4.      Defendant Blount County is a governmental entity and political subdivision of the State of Tennessee. The Blount County Sheriff's Office is a department or division of Blount County with its principal place of business located at 940 E. Lamar Alexander Parkway, Maryville, Tennessee 37804, and is the employer of Defendants Burns and Patty, Sherriff James L. Berrong, and Lieutenant Scott Boyd.

5.      At all times material hereto Defendant Jerry Burns was a duly appointed and sworn Deputy Sheriff working for the Blount County Sheriff's Office and resides in Blount County, Tennessee. Defendant Burns is being sued individually and in his official capacity.

6.       At all times material hereto Defendant James Patty was a duly appointed and sworn Deputy Sheriff working for the Blount County Sheriff's Office and resides in Blount County, Tennessee. Defendant Patty is being sued individually and in his official capacity.

7. At all times material hereto Defendant Lieutenant Scott Boyd was a duly appointed and sworn Deputy Sheriff working for the Blount County Sheriff's Office. Defendant Boyd is being sued individually and in his official capacity.

8. At all times material hereto, Sherriff James L. Berrong was the duly elected sheriff of the Blount County Sheriff's Office, and, therefore, statutorily responsible for the following:

(a) Hiring, training, supervising and firing persons employed as deputy sheriffs;

(b) Fulfilling his duty to train and supervise deputy sheriffs in the constitutional and legal use of force;

(c) Overseeing all Blount County officers, including investigation, patrol and any other duties performed by these officers;

(d) Developing departmental policies, rules and regulations; and,

(e) Ensuring compliance with these departmental policies, rules and regulations.

Sherriff Berrong is being sued in his official capacity.

9. At all times material hereto, Defendants Burns, Patty and Boyd, and Sherriff Berrong, acted while in the performance of their official duties, and, therefore, under color of Tennessee state law. In the alternative, although acting in the performance of their official duties, Defendants Burns, Patty, and Boyd acted intentionally and/or outside the scope of their official authority.

## **VENUE AND JURISDICTION**

10. This Court has original jurisdiction over Plaintiff's claims arising out of the United States Constitution and 42 U.S.C. § 1983 by virtue of 28 U.S.C. §§ 1331 and 1343.

11.    Venue is proper in this Court under 28 U.S.C. § 1391 (b)(2) because the events or omissions which give rise to Plaintiff's claims occurred in Blount County, Tennessee.

12.    This Court has supplemental jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1367(a).

13.    Jurisdiction is proper, and this court should assume supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the State Law claims brought individually and officially, pursuant to the Tennessee Governmental Tort Liability Act (TGTLA) Tenn. Code Ann. §§ 29-20-202; 29-20-205; 8-8-302; 8-8-303, and individually as to the Common and Statute Laws of the State of Tennessee.

14.    Plaintiff is entitled to reasonable attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988.

## WAIVER OF IMMUNITY

15.    Blount County has waived immunity for negligence of the county and its employees, misconduct of deputies acting under color of law, and for the negligence of deputies or employees of the Sherriff's Office or the county, as set out in Tenn. Code. Ann. §§ 29-20-202-205, and for the intentional acts or misconduct done by deputies under color of law, as set out in Tenn. Code. Ann. §§ 8-8-302-303.

16.    As officers employed by the Blount County Sheriff's Office, Defendants Burns, Patty and Boyd, and Sherriff Berrong, are each a "Government Employee" as defined by Tenn. Code Ann. § 29-20-107.

17.    There is no immunity for persons for criminal conduct or conduct which is willful, malicious, or grossly negligent.

18.     The governmental immunity of Defendants Blount County and Berrong is also removed as a result of Defendant Burns, Patty, and Boyd's willful and wanton misconduct and/or negligence while acting within the scope of their employment with the Blount County Sheriff's Office when they proximately caused injury to Mr. Edwards and, ultimately, his death.

19.     There is no immunity for the conspiracy to cover up the events that led to the injury and death of Mr. Edwards, which was willful, malicious and criminal.

20.     There is no immunity for the violation of Mr. Edwards' constitutional rights, which were clearly established and should have been appreciated by a reasonable deputy in the performance of his or her duties.

21.     The Blount County Sheriff is statutorily obligated to post a secured bond in an amount no less than One Hundred Thousand Dollars ($100,000.00) to secure the faithful execution of the duties of his office. Tenn. Code Ann. § 8-8-103.

## GENERAL FACTUAL ALLEGATIONS

22.     On the 25th of July, 2016, just after midnight, Defendant Burns was on routine patrol when he observed Decedent Anthony Edwards and another adult, Travis Hickam, minding their own business walking down the road in the vicinity of Winchester Drive and Patterson Road.

23.     Despite the fact that Mr. Edwards and Mr. Hickam were doing nothing more than walking down the road talking with one another, Defendant Burns turned his patrol car around and stopped and seized the two men on the side of the road.

24.     Defendant Burns exited his patrol vehicle and asked each man for their identification. Burns had no reasonable suspicion that either of the two men was engaged in unlawful activity or had engaged in any unlawful activity.

25.     Mr. Edwards chose not to converse with Defendant Burns. Mr. Edwards turned from Defendant Burns and started to go on his way, at which point Defendant Burns grabbed Edwards, and Edwards began to run. Defendant Burns chased him on foot, deploying his taser at Mr. Edwards' back. Mr. Edwards had the right to not converse with Defendant Burns or any other member of law enforcement and to resist an unlawful arrest and/or unlawful use of force by Defendant Burns commensurate with the amount of the unlawful use of force by Burns on Edwards. Edwards only sought to exercise his rights and to protect himself from the unlawful arrest and unlawful use of force by Defendant Burns on him as can plainly be heard on the audiotape from Burns' audio recording.

26.     Defendant Burns tackled and pinned Mr. Edwards to the ground. Although the video footage is too dark to be visible, over several minutes Anthony Edwards can be heard on the audio recording informing Burns that he (Edwards) is having a seizure; that Burns is hurting him; that Burns hit him in the face; that Burns is beating him and that Edwards fears for his life. Later on the same tape Edwards can be heard telling another officer who has arrived, believed to be Defendant Patty, that Burns hit him in the face and asking him to call 911. *See* Audio/Video Recording from 045343, at counter number 1:30.

27.     Shortly after Defendant Patty arrived on the scene at approximately 1:01 AM, he and Defendant Burns escorted Mr. Edwards—now with his hands cuffed in front—to Defendant Patty's cruiser. Exactly what ensued thereafter is lost for all time, as Burns' body camera was conveniently left on the ground yards away. *See* Audio/Video Recording from 045343, at counter number 9:00 (displaying four and a half minutes of darkness and silence before Deputy Burns' body cam is retrieved by another deputy on the scene at approximately 1:07 A.M.). Defendant Patty's body camera was not turned on until more than 10 minutes later, after Mr. Edwards' lie

prone and unconscious on the ground. *See* Audio/Video Recording from 051611, at counter number 00:09 (at approximately 1:16 A.M.). Outside Patty's cruiser at approximately 1:03 A.M., Burns grabbed Edwards, raised him up and violently slammed his body and his head onto the concrete pavement. In the alternative, Defendant Burns picked Mr. Edwards up and dropped him onto the concrete, in utter disregard for the fact that a drop from that height onto hard concrete was likely to cause Edwards serious injury. Mr. Edwards immediately became unresponsive and clearly struggled to breathe. *See* Audio/Video Recording from 045217, at counter number 16:30 (the scuffle occurs off-screen from Deputy Patty's dash camera at 1:03 A.M.; Mr. Edwards is unresponsive from approximately 1:04 A.M.).

28.　　From this point forward on all of the body camera recordings and audio recordings, Defendant Burns can be heard telling his story to various law enforcement personnel, making refinements to his version of the facts as he goes, including telling someone that Edwards was "snoring" so Burns knew that Edwards was "out". The terrible reality is that Edwards was not snoring; rather he can be heard whimpering in pain and struggling to breathe as Burns snickers about the encounter. *See* Audio/Video Recording from 045343, starting at counter number 16:50 and again at 23:00.

29.　　On the A/V Recording from 051611, at counter number 21:32, Defendant Patty can be heard speaking to Defendant Boyd (who was at that time a patrol sergeant), and telling that supervisor "Jerry[1] slammed him; you knew that, right?" at which point Boyd responds, "was is it a slam, or a drop?" in a clear effort to mold the facts of the story before the crime scene technicians arrived to take formal statements from the deputies.

---

[1] "Jerry" is Defendant Burns.

30.     On the A/V Recording from 052807 at counter number 16:11, Lieutenant Boyd speaks to Defendant Burns about the use of force against Mr. Edwards and asks Defendant Burns, "Did you slam him, or drop him?" The supervisor instructs Defendant Burns to "be consistent" when he gives his formal statement.

31.     On the A/V Recording from 052807 at counter number 33:50, Defendant Burns can be heard telling another deputy that he "grabbed" Edwards, "picked him up and just slammed him on the ground."

32.     In a Use of Force report completed by Defendants Burns and Patty several hours later (4:20 A.M. on July 25, 2016), Defendant Burns reported that he performed a "rear takedown" on Edwards. As the supervisor on shift, Lieutenant Boyd signed off on this report. Defendant Boyd commented that "[t]he force used . . . appears reasonable[.]"

33.     Upon information and belief, Defendant Burns received additional coaching from his fellow deputies and supervisors after speaking with Lieutenant Boyd and prior to completing the Use of Force report and providing a formal statement. For example, on the Audio/Video Recording from 065347, at counter number 10:10 (approximately 3:04 A.M.), when Defendant Burns is sitting alone in his cruiser, another deputy or supervisor at the scene opens the door to Burns' vehicle. In response to some word or motion from that deputy, Defendant Burns replies "yeah, I feel you," removes his body camera and exits the vehicle. Burns returns to his vehicle and restores his camera 70 seconds later.

34.     Edwards lay on the ground suffering for over half an hour waiting for the arrival of an ambulance to transport him. Over an hour passed after the arrival of the ambulance while they waited for LifeStar to arrive to take Edwards to the University of Tennessee Medical Center where he died the following day from his injuries.

35.     While Edwards awaited medical treatment, a supervisor, believed to be Defendant Boyd, called Blount, Sevier, and Knox Counties attempting to find open felony warrants on Mr. Edwards. The deputies on the scene can be heard rejoicing with sounds of cheer ("*yay*") when a warrant is located, and later expressing disappointment when it is discovered the warrant is for a mere misdemeanor. *See* Radio Calls, transmissions at 1:18:59; 1:28:18; 1:29:41; 1:36:29; and 1:37:15 (*"Can you look and see if it's a felony? It's kind of important."* and *"OK. I was kind of hoping it was a felony.").*

36.     An autopsy conducted by Dr. Amy Hawes of the Medical Examiner's Office determined that the cause of death was blunt force injuries to Mr. Edwards' head and that the manner of death was "homicide."  The autopsy noted that Edwards also had acute rib fractures of his right ribs, 5 through 9, and a left rib fracture, at number 5.

37.     As a result of the actions and inactions of the Defendants, Mr. Edwards suffered injuries, hospitalization and death, the Decedent incurred medical bills of at least Forty-Eight Thousand Four Hundred Sixty-Seven Dollars and Eighty-Five Cents ($48,467.85) for hospitalization and treatment; for the air ambulance, LifeStar; for Rural Medical treatment; and Six Thousand Two Hundred Eleven and Two cents ($6,211.02) for cremation and funeral expenses.

38.     As a result of his death, Mr. Edwards left behind two minor children who have lost the love, support, society, affection and guidance of their father for which they must be compensated under the Wrongful Death Act and for the intentional violation of Edwards' rights under the Fourth Amendment to the U.S. Constitution by the arbitrary and wanton acts of violence on Mr. Edwards during his apprehension for which there was no probable cause or reasonable suspicion of criminal conduct.

39.    Mr. Edwards' right to be free from unlawful arrest and the excessive use of force under the Fourth Amendment was a clearly established right on July 25, 2016 which right would have been known to a reasonable law enforcement officer.

40.    As a result of actions and inactions of the Defendants, Mr. Edward suffered injuries pre-death, including pain and suffering and fright, of which the Decedent's Estate is entitled to be compensated.

**UNITED STATES OF AMERICA**
**CONSTITUTION CLAIMS**

**COUNT I**
**UNLAWFUL SEIZURE AND FALSE ARREST UNDER FOURTH AMENDMENTS**

41.    Plaintiffs adopt paragraphs 1 through 40 as fully set forth herein.

42.    Plaintiffs bring this action against Defendants Burns and Patty pursuant to 42 U.S.C. § 1983 for their actions taken under color of State Law.

43.    Plaintiffs' Decedent Anthony Edwards had a constitutional right to be free from unlawful seizure and/or false arrest on other than probable cause. The right not to be arrested on less than probable cause, or to be detained without articulable suspicion for such detention, was a clearly established constitutional right on July 25, 2016.

44.    On July 25, 2016, Defendant Burns accosted Edwards and his companion, Travis Hickam, while they were doing nothing more than walking down a country road at night. Burns' actions in his initial encounter with Mr. Edwards and his companion was a seizure subject to the mandates of the Fourth Amendment to the Constitution of the United States. By ordering Hickam to remain where he was when Edwards chose not to talk with Burns, Burns had seized Hickam. By chasing, tackling, and pinning Edwards to the ground, Defendant Burns seized Edwards pursuant to the Fourth Amendment.

45.     Defendant Burns had no probable cause to arrest Mr. Edwards. Edwards committed no crime in the presence of Burns, and there was no reason to believe Edwards committed a crime. Because Defendant Burns had no articulable suspicion that Mr. Edwards was engaged, or about to be engaged, in any criminal conduct at the time that Burns detained Edwards and his friend, Hickam, the seizure of Edward's person was both unreasonable and unlawful.

46.     Defendant Burns and Defendant Patty then conspired to author and execute a Use of Force report containing false statements and false information regarding the force used and the surrounding circumstances in order to create the erroneous impression that Defendant Burns had some lawful basis on which to arrest Mr. Edwards and attempt to justify the use of force on Edwards.

47.     Any member of law enforcement would have known on July 25, 2016 that arresting Mr. Edwards on less than probable cause, or detaining Edwards without any reasonable suspicion of criminal wrongdoing, would be a violation of the constitutional rights of Mr. Edwards. These Defendants were on fair notice that their conduct would be unconstitutional at the time that they engaged in the unconstitutional conduct.

48.     Defendants Burns, Patty and Boyd knew the arrest was unconstitutional because *after the fact* they attempted, but failed, to locate a felony warrant that would enable them to try to justify the unconstitutional conduct of Defendants Burns and Patty.

49.     The fact that a supervisor, believed to be Defendant Boyd, was desperately calling Blount, Sevier, and Knox Counties attempting to find open felony warrants on Mr. Edwards is an admission that they all knew that Defendants Burns' and Patty's actions were unconstitutional and the Sheriff's Office supervisors were attempting to backfill facts to create probable cause. *See*

Radio Calls, transmissions at 1:18:59; 1:28:18; 1:29:41; 1:36:29; and 1:37:15 (*"Can you look and see if it's a felony? It's kind of important."* and *"OK. I was kind of hoping it was a felony."*)

50.     As a result of the unconstitutional seizure/detention and/or arrest, Anthony Edwards was inexcusably injured, handcuffed, and bleeding from his ears, after earlier begging Deputy Patty for help and medical assistance. Edwards lay on the ground dying while Burns tried to figure out what kind of charges he could load up on him.

51.     The actions of Defendants Burns and Patty which proximately caused the injuries to Mr. Edwards were criminal, willful, wanton and/or done in reckless disregard to the rights of Mr. Edwards and as such warrant the imposition of punitive damages to deter them and others like them in the future from engaging in similar conduct.

52.     Plaintiffs are entitled to reasonable attorneys' fees and costs.

**WHEREFORE** Plaintiffs demand judgment against Defendants Burns and Patty in the amount of Three Million Dollars and No Cents ($3,000,000.00) as actual and general damages for the constitutional violation, Twenty-Five Million Dollars and No Cents ($25,000,000.00), in punitive damages, costs of this action, reasonable attorneys' fees, and pre-judgment and post-judgment interest.

## COUNT II
## EXCESSIVE USE OF FORCE BY DEFENDANT BURNS

53.     Plaintiffs adopt paragraphs 1 through 40 as fully set forth herein.

54.     Plaintiffs bring this action against Defendants Burns pursuant to 42 U.S.C. § 1983 for his actions taken under color of State Law.

55.     Mr. Edwards had the constitutional right under the Fourth Amendment to be free from the use of excessive force by Defendant Burns in effecting an arrest. Burns was only

permitted to use the degree of force necessary to effectuate what a reasonable officer would believe to be a lawful arrest, commensurate with the "crime" alleged and the surrounding circumstances.

56.     Because Defendant Burns had no lawful basis on which to seize, detain, and/or arrest Mr. Edwards at the time that he employed force, Defendant Burns' use of force was unconstitutional and in violation of the Fourth Amendment. In the alternative, even if the arrest of Mr. Edwards was lawful, Defendant Burns employed excessive force in effectuating that arrest.

57.     By Defendant Burns' own admissions at the scene of the take-down of Mr. Edwards, Burns picked Edwards up off the ground and slammed his head and body onto the concrete pavement thereby causing the injuries later noted in the autopsy report. Lieutenant Boyd speaks to Defendant Burns and at counter number 16:11 asks Defendant Burns, "Did you slam him, or drop him?" Burns responds that he "slammed" Edwards to the ground and Lieutenant Boyd instructs Defendant Burns to "be consistent" when he gives his formal statement to investigators and completes his reports.

58.     Defendant Burns' actions in picking Mr. Edwards up off the ground and intentionally slamming him down on the concrete pavement, causing Edwards' head to slam against the hard surface, was done with such force as to cause fractures to Edwards' skull, along with multiple rib fractures.

59.     The amount of force and ultimate killing of Mr. Edwards was far out of proportion to the circumstances as they existed and were known to exist on July 25, 2016 and/or was done for the purpose of inflicting pain and punishing Edwards for running away from Defendant Burns.

60.     The use of excessive force in making a detention or arrest was a violation of Mr. Edwards' Fourth Amendment rights. It was clear that Defendant Burns knew he had used excessive force because he attempted to downplay the seriousness of Edwards' injuries by refusing Edwards'

pleas to call for help prior to the final slamming of Edwards' head onto the pavement and then suggesting Mr. Edwards was "snoring" when anyone listening to the audio tape would know that those sounds were not snoring, but rather whimpers of pain and the sounds of a human being struggling to breathe. *See* Audio/ Video Recording from 045343, starting at counter number 16:50 and again at 23:00.

61.     Mr. Edwards had a constitutional right to be free from the use of excessive force against him and free from the unconstitutional use of deadly force. The right to be free from excessive force was a constitutional right that was clearly established at the time of Defendants Patty and Burns' encounter with Edwards. The actions of Defendant Burns in slamming Mr. Edwards' head onto the hard pavement constituted deadly force. Any reasonable officer would have known that the use of deadly force in this context was excessive and violated Mr. Edwards' constitutional rights.

62.     The use of deadly force under the circumstances as they existed on July 25, 2016 was objectively unreasonable. Any reasonable officer would have understood that the right of Mr. Edwards to his life was greater than the right of Burns to stop Edwards from running away where Edwards was not suspected to have committed any crime involving the infliction of serious physical harm, nor had he committed a crime in Burns' presence, nor did Edwards pose a threat to the deputy or others by running away. *See* Audio/Video Recording from 045343, at counter number 26:11 (in which Burns states that Mr. Edwards "was just trying to get away from me . . . he wasn't fighting or anything like that . . .").

63.     Defendant Burns knew, as did the other officers who came to the scene, that the failure to have probable cause to arrest Edwards at that time constituted a violation of the

constitutional rights of Edwards to be free from an unreasonable seizure and *would directly impact the degree of force that Burns and Patty were entitled to use*.

64.     The fact that a supervisor, believed to be Defendant Boyd or another deputy with supervisory responsibilities, desperately called Blount, Sevier, and Knox Counties attempting to find open warrants on Mr. Edwards and that the deputies on the scene ultimately rejoiced with sounds of cheer ("*yay*") more than twenty-five minutes after Edwards had been beaten to the point of brain death is an admission that Burns' superiors as well as Defendants Burns and Patty knew Burns' actions were unconstitutional because they were attempting to backfill facts to create probable cause and justify the use of force on Mr. Edwards. *See* Radio Calls, transmissions at 1:18:59; 1:28:18; 1:29:41; 1:36:29; and 1:37:15 (*"Can you look and see if it's a felony? It's kind of important." and "OK I was kind of hoping it was a felony."); see also 911 Recordings at 19:48 and -51:52.*

65.     As a result of the use of excessive force on Mr. Edwards, Edwards lay on the ground conscious and suffering for over half an hour, while waiting for the arrival of an ambulance to transport him. Over an hour passed after the arrival of the ambulance while they waited for LifeStar to arrive to take Decedent Edwards to the University of Tennessee Medical Center where he died the following day from his injuries.

66.     An autopsy conducted by Dr. Amy Hawes of the Medical Examiner's Office determined that the cause of death was blunt force injuries to Mr. Edwards' head and that the manner of death was "homicide". The autopsy also noted that Edwards also had acute rib fractures of his right ribs, 5 through 9, and a left rib fracture, at number 5. These injuries are so severe, and the force required to inflict them, that the conduct of Defendant Burns in causing them would outrage a normal person.

67.     As a result of his injuries, hospitalization and death, the Decedent incurred medical bills at a minimum of Forty-Eight Thousand Four Hundred Sixty-Seven Dollars and Eighty-Five Cents ($48,467.85) for hospitalization and treatment; for the air ambulance, LifeStar; for Rural Medical treatment; and Six Thousand Two Hundred Eleven and two cents ($6,211.02) for cremation and funeral expenses.

68.     As a direct and proximate result of the constitutional violations of Mr. Edwards' rights, Mr. Edwards was seriously injured, and suffered terribly as he lay on the ground bleeding from his ears and struggling to breathe, after earlier begging Defendant Patty for help and medical assistance. Edwards was consciously aware of the grievous nature of his injuries, whimpering in pain. These injuries caused Edwards to suffer terrible pain and fear in his final hours of consciousness.

69.     The conduct on the part of Defendant Burns was criminal, malicious, intentional, and/or reckless so as to warrant the imposition of punitive damages against Defendant Burns for his callous indifference to the rights of Decedent Edwards.

**WHEREFORE** Plaintiffs demands judgment against Defendant Burns in the amount of Three Million Dollars and No Cents ($3,000,000.00) as actual and general damages for the constitutional violation, Twenty-Five Million Dollars and No Cents ($25,000,000.00), in punitive damages, costs of this action, reasonable attorneys' fees, and pre-judgment and post-judgment interest.

**COUNT III**
**CONSPIRACY BY DEFENDANTS BURNS, PATTY AND BOYD TO FALSIFY THE USE OF FORCE REPORT AND TAILOR BURNS' TESTIMONY RELATING HIS USE OF EXCESSIVE FORCE**

70.     Plaintiffs adopt paragraphs 1 through 40 as fully set forth herein.

71.     Plaintiffs bring this action against Defendants Burns, Patty, and Boyd pursuant to 42 U.S.C. § 1983 for their actions taken under color of state law.

72.     Falsifying facts to establish probable cause and/or justification for the use of force is unconstitutional, unlawful, and criminal.

73.     Even the most inexperienced and untrained law enforcement officer would have known that lying on the official Use of Force report in order to justify the use of excessive force and/or to attempt to establish probable cause to arrest would violate Mr. Edwards' constitutional rights.

74.     Completing the Use of Force report was not a discretionary act on the part of Defendants Burns, Patty, and Boyd. Completion of that report was mandatory.

75.     Defendant Burns was coached by his supervisor, Defendant Boyd, at the scene as to what to say when he was formally interviewed about the circumstances that resulted in the physical injury to Edwards, and when filling out the Use of Force report.

76.     It was the job of Lieutenant Boyd to protect the constitutional rights of Mr. Edwards, and not to cover up the unconstitutional conduct of his subordinate deputy, Defendant Burns. Instead of protecting Edwards from the violation of his constitutional rights to be free from unlawful seizure and/or false arrest, as well as the use of excessive force to effectuate the false arrest, Defendant Boyd elected to coach Burns as to what to put in the Use of Force report and what to say to investigators when they arrived to take his statement, so that Burns could avoid punishment and civil liability for his actions on July 25, 2016.

77.     Lieutenant Boyd coached Burns and Patty as to how to word their report and how to respond to the formal interview in order to avoid a determination that they had used excessive force despite the fact that it was clear to Lieutenant Boyd on the night of July 25, 2016 that Burns

had used excessive force. Defendant Boyd knew the force used was excessive because Burns admitted to "slamming" Mr. Edward's onto the pavement. Upon information and belief, after Defendant Burns spoke with Defendant Boyd, but prior to Burns and Patty completing the Use of Force report, Burns received additional coaching from Boyd and/or another deputy at Boyd's direction as to how Burns should word his report and formal statement. For example, at approximately 3:04 A.M., Burns removed his body camera and exited his cruiser in an apparent effort to have an off-the-record conversation with a fellow deputy or supervisor. *See* Audio/Video Recording from 065347, at counter number 10:10.

78.     As Mr. Edwards lay on the ground suffering and whimpering in pain, a supervisor, believed to be Defendant Boyd, called the surrounding counties attempting to establish **after-the-fact** that Mr. Edwards was wanted for a felony. *See* Radio Calls, transmissions at 1:18:59; 1:28:18; 1:29:41; 1:36:29; and 1:37:15 (*"Can you look and see if it's a felony? It's kind of important."* and *"OK. I was kind of hoping it was a felony."*)

79.     Armed with the coaching by Defendant Boyd, Defendants Burns and Patty falsified the facts in the Use of Force report and their formal statements to downplay the amount of force used and create the false extra-judicial record that there was probable cause to arrest Mr. Edwards, thereby justifying Defendant Burns' excessive use of force and further allowing the dissemination of "fake news" to the media, including reports falsely suggesting deputies knew Edwards had a warrant for his arrest and that Edwards "put up a fight," so that the public at large and citizens of Blount County could justify in their minds the actions of the officers in killing Edwards.

80.     As a result of the falsification by Defendant Burns and Defendant Patty of the facts contained in the Use of Force report, Burns was exonerated by Lieutenant Boyd and other supervisors, as well as the Sheriff's Office of the use of excessive force, allowing Defendant

Burns to remain on duty even as his illegal and unlawful actions rendered Anthony Edwards brain dead. Lieutenant Boyd signed the Use of Force report, indicating that "[t]he force used . . . appears reasonable[.]" The false statements and/or information in the Use of Force report were used to rubber stamp the finding of justification in the use of force and killing of Edwards which Lieutenant Boyd knew would be the case.

81. As a result of the finding that Defendants Burns and Patty were justified in their use of force, once again the message from Blount County and the Blount County Sheriff's Office was sent to deputies working for the Blount County Sheriff's Office that the use of excessive force would not be subject to meaningful investigation and they would face no adverse consequences as a result. By failing to act, the Blount County defendants condoned and ratified this misconduct. Defendants Burns and Patty acted as they did because they knew that the use of excessive force would be condoned and/or that they would be protected by their supervisors.

82. As a direct and proximate result of the violation of Edwards' constitutional rights by Defendants Burns and Patty, Edwards did not live to be able to prosecute Burns, Patty, and Boyd internally through departmental processes. Instead, their falsifications were used to justify the use of deadly force on Edwards, a violation of his constitutional rights under the Fourth Amendment on July 25, 2016.

83. Mr. Edwards paid with his life for the unconstitutional use of force by Defendants Burns and Patty during his arrest without probable cause. Defendant Boyd facilitated the finding that Burns' use of force was justified and as a direct and proximate result of this conspiracy Mr. Edwards suffered damages.

84. This misconduct was so outrageous and reprehensible as to support the imposition of punitive damages. It strikes at the very heart of our judicial system to allow law enforcement

officers to lie in their reports to justify their unconstitutional actions. Such conduct is outrageous and must be punished.

**WHEREFORE** Plaintiffs demand judgment against Defendants Burns and Patty, and the Blount County defendants, in the amount of Three Million Dollars and No Cents ($3,000,000.00) as damages for the constitutional violation, Twenty-Five Million Dollars and No Cents ($25,000,000.00), in punitive damages, costs of this action, reasonable attorneys' fees, and pre-judgment and post-judgment interest.

**COUNT IV**
**FAILURE TO TRAIN, SUPERVISE AND INVESTIGATE REGARDING THE EXCESSIVE USE OF FORCE AND RATIFICATION BY SHERIFF BERRONG AND BLOUNT COUNTY OF UNCONSTITUTIONAL CONDUCT**

85.     Plaintiffs adopt paragraphs 1 through 40 as fully set forth herein.

86.     Plaintiffs bring this action against Blount County pursuant to 42 U.S.C. § 1983 for actions taken under color of state law.

87.     Sheriff Berrong had a duty to train, manage, and supervise those persons working for him to prevent constitutional violations of its citizens and the members of society to which members of law enforcement encounter.

88.     Sheriff Berrong utterly refused to screen, hire, train, monitor, supervise, control, assign, counsel, investigate, and discipline those persons working for him which resulted in the adoption and ratification of unconstitutional practices of his department of which Mr. Edwards suffered pain and death.

89.     Sheriff Berrong failed to train and supervise Defendants Burns and Patty and their fellow officers as to the proper circumstances under which force could be used, including, but not limited to, proper "takedown" measures in apprehending and/or taking persons into custody. He failed to properly and completely investigate allegations of the use of excessive force within his

Office, and attempted to cover-up serious injuries and deaths to citizens as a result of the use of excessive force by his subordinates.

90. As of June 25, 2016, Sherriff Berrong knew from past litigation, citizen complaints and incidences that the deputies in his Office routinely used excessive force in apprehending and/or taking into custody suspects and often engaged in the gratuitous infliction of pain and punishment. For example, since 2006, at least seven lawsuits have been filed in federal court against Berrong and the County concerning alleged incidences of excessive force. *See*, *e.g.*, *Dixon v. Donald*, No. 3:06-CV-135 (E.D. Tenn.) (filed April 12, 2006); *Cox v. Reagan*, No. 3:06–CV–250 (E.D. Tenn.) (filed June 30, 2006); *Turner v. Blount County*, No. 3:06-cv-471 (E.D. Tenn.) (filed Dec. 13, 2006); *Sheib v. Boderk,* No. 3:07-CV-446 (E.D. Tenn.) (filed Nov. 21, 2007); *Estate of Hickman v. Moore*, No. 3:09-cv-069 (E.D. Tenn.) (filed Feb. 24, 2009); *Ridinger v. Ragland,* No. 3:14-CV-390 (E.D. Tenn.) (filed Aug. 18, 2014); *Hodge v. Blount County*, No. 3:16-cv-317 (E.D. Tenn.) (filed June 10, 2016); *Colson v. City of Aloca*, No. 3:16-CV-377 (E.D. Tenn.) (filed June 23, 2016). Upon information and belief, numerous other complaints and incidences of excessive force had been filed or reported prior to June 25, 2016, which were resolved overwhelmingly in favor of the involved officer(s).

91. Not only did Berrong fail to discourage such excessive and/or gratuitous violence, he himself actually participated in it, sending the message to his subordinates that such conduct was acceptable on the job. For example, in March 2011, Sherriff Berrong was present during an incident in which Blount County Sergeant Douglas Moore repeatedly kicked and punched an arrestee, Timothy Coulter, cracking several of his ribs. Berrong used the butt of a shotgun to restrain Mr. Coulter. The Sherriff's Office later released a statement noting that, based on a review of dash cam footage, the kicks were not the appropriate force needed, noting "Deputies are not

trained to kick people in that way that was seen in the video." *See* April 5, 2011 Memorandum by Captain Jeff Clark, http://www.documentcloud.org/documents/228341-072711coulterforce.html (accessed Nov. 21, 2017). Despite this finding, and the fact that the FBI launched a civil rights investigation into the incident, Moore was suspended for just three days without any recommendation that he be retrained. Four days after the incident, Berrong promoted Moore to Lieutenant.

92.     Any formal training that Blount County deputies received regarding the use of appropriate force, including, but not limited to, proper "takedown" measures when taking a person into custody, was undermined by the actions of Sherriff Berrong and other supervisors that condoned the use of excessive force. Upon information and belief, deputies frequently did not receive retraining after receiving an excessive force complaint.

93.     Sheriff Berrong also failed to obtain legitimate and impartial investigations into claims by the public of the excessive use of force by his subordinates. By his failure to conduct impartial investigations and discipline and retrain those officers under his command who engaged in the use of excessive force, Sherriff Berrong acquiesced in the unconstitutional conduct of those persons working for the Sheriff's Office and permitted a *de facto* policy allowing the use of excessive force and/or gratuitous violence by those deputies employed by the Blount County Sheriff's Office.

94.     This culture of violence within the Blount County Sheriff's Office existed for years, long enough for Sherriff Berrong and Defendant Blount County to be aware of it. This policy and/or custom allowing the use of excessive force, and failing to conduct legitimate investigations or discipline those involved was widely known to Blount County Sheriff's deputies, leading them to believe they could use excessive force with impunity, without fear of punishment or other

adverse consequences. The foreseeable result of this *de facto* policy and/or custom was further instances of the unconstitutional excessive force, such as the events leading to Mr. Edward's untimely death.

95. By their knowledge and failure to take appropriate measures to alter the culture of gratuitous violence and the rampant use of excessive force within the Sheriff's Office, Sherriff Berrong and Defendant Blount County have approved and ratified the conduct of the subordinates whom engaged in the use of excessive force and/or gratuitous violence, and this *de facto* policy resulted in constitutional violations of Mr. Edwards.

96. Sheriff Berrong not only turned a blind eye to evidence and/or allegations that raised questions about the use of excessive force within the Sherriff's Office, he affirmatively enacted policies and procedures that resulted in the systematic deprivation of the constitutional rights of citizens such as Mr. Edwards which was known to—and ratified by—Blount County. Among these policies and procedures was the practice of "coaching" of deputies by Blount County Sheriff's Office personnel in a supervisory position in how to present their testimony on their Use of Force reports and in their formal statements to enable deputies who used force to avoid a finding of the unjustified use of force. This was done to avoid or reduce the incidences where the County would be found legally liable for the unlawful/unconstitutional actions of its deputies.

97. Decedent Anthony Edwards was subjected to the use of excessive force as a result of the failure of Defendants Berrong and Blount County to check/control the baser natures of deputies in the Blount County Sheriff's Office who were unable to control their emotions when apprehending persons without probable cause. Pursuant to the custom and/or policy of the Blount County Sheriff's Office, Defendant Burns was coached by his fellow deputies and supervisors in how to present his testimony in his Use of Force report and formal statement, thereby ensuring a

finding that the use of force was justified. Upon information and belief, Sherriff Berrong was actively involved in the lax investigation that followed; in July 2017, Berrong himself issued a statement to the local media clearing Defendant Burns of any wrongdoing. Defendant Burns was not disciplined or retrained in the appropriate use of force following the events leading to Mr. Edward's death.

98.     Mr. Edwards suffered severe physical injuries and suffered awful pain and fear as he lay on the ground following the brutal attack by Defendant Burns, and most of the last hours of his life were filled with almost unbearable pain and the knowledge that he desperately needed medical care which was not immediately provided as officers on the scene took their time calling for medical help.

99.     As a direct and proximate result of Defendants Berrong and Blount County's actions and inactions to Mr. Edwards' constitutional rights were violated, and injuries sustained. Had Defendant Burns been adequately trained in the appropriate use of force, including, but not limited to, proper "takedown" measures, and/or had the Blount County Sheriff's Office properly investigated prior instances of excessive force and disciplined those involved, Mr. Edwards would be alive today.

100.     Mr. Edwards suffered severe head trauma, fractured ribs which required medical care and treatment, pain, fear and humiliation at being rendered impotent to protect himself from the injuries inflicted on him and from hearing Defendant Burns make light of his suffering by suggesting that Burns heard Edwards "snoring" when, in reality, Edwards was struggling to breathe due to his injuries.

**WHEREFORE** Plaintiffs demand judgment against Blount County in the amount of Twenty-Five Million Dollars and No Cents ($25,000,000.00), costs of this action, reasonable attorneys' fees, and pre-judgment and post-judgment interest.

## LAWS OF THE STATE OF TENNESSEE CLAIMS

### COUNT V
### NEGLIGENT USE OF FORCE DURING ARREST

101.    Plaintiffs adopt paragraphs 1 through 40 as fully set forth herein.

102.    Defendant Burns was grossly negligent, or in the alternative, negligent in employing excessive force when he attempted to arrest Mr. Edwards. Defendant Burns owed a duty of reasonable care to Mr. Edwards to avoid using an excessive degree of force so as not to endanger him or cause harm when effectuating the arrest of Mr. Edwards.

103.    Defendant Burns was only permitted to use the degree of force necessary to effectuate what a reasonable officer would believe to be a lawful arrest, commensurate with the "crime" alleged and the surrounding circumstances.

104.    At the time that Defendant Burns employed force to arrest Mr. Edwards for "resisting arrest" Burns negligently picked Mr. Edwards up and slammed and/or dropped him onto the hard pavement with substantial force causing severe injury, without taking into account the spot where Edwards' head would strike the ground. This degree of force was not objectively reasonable given the surrounding circumstances. Defendant Burns was not justified in the use of deadly force and by Burns' negligent acts the force employed amounted to deadly force.

105.    Defendant Burns' consciously disregarded the need to use reasonable care, or otherwise failed to exercise reasonable care, when he failed to consider the location—the hard concrete—where he was going to slam and/or drop Mr. Edwards to the ground. Burns' negligent acts resulted in injuries to Edwards, including a fractured skull, multiple contusions and bruises on

his arms and legs, and multiple fractures of Edwards' anterior ribs resulting in the need for medical treatment. Burns' conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Edwards, or otherwise fell below the standard of care for a sworn law enforcement officer.

106. As a result of the injuries, Plaintiffs' Decedent incurred medical bills of at least Forty-Eight Thousand Four Hundred Sixty-Seven Dollars and Eighty-Five Cents ($48,467.85) for hospitalization and treatment; for the air ambulance, LifeStar; for Rural Medical treatment; pain and suffering which is documented on the audio recordings of the Blount County Sheriff's deputies and almost too painful to listen to.

**WHEREFORE,** Plaintiffs demand judgment in favor of the Estate of Anthony Edwards against Defendant Burns and Defendant Blount County pursuant to T.C.A. § 29-20-205, or in the alternative, T.C.A. § 8-8-302, in the amount of One Hundred Thousand Dollars and No Cents ($100,000.00) in special damages, Three Hundred Thousand Dollars and No Cents ($300,000.00) in General Damages, Ten Million Dollars and No Cents ($10,000,000.00) in punitive damages, pre-judgment interest, post-judgment interest, and costs of this action.

### COUNT VI
### BATTERY ON ANTHONY EDWARDS
### BY DEFENDANT BURNS

107. Plaintiffs adopt paragraphs 1 through 40 as fully set forth herein.

108. In the alternative, Defendant Burns committed aggravated battery on Decedent Anthony Edwards by tackling and pinning Edwards to the ground, then later lifting Edwards and intentionally slamming him onto the concrete payment causing Mr. Edwards' skull to strike the pavement with substantial force, causing fractures to Mr. Edwards' skull and bleeding in the brain, and fractures to Edwards' ribs in multiple locations, causing severe trauma and pain to Edwards.

109.	Defendant Burns intentionally caused these injuries and pain to Edwards to punish Edwards for running away from Burns.

110.	Mr. Edwards begged Burns to call for medical help because of his injuries and Burns failed and refused to do so until Defendant Burns could get his story straight to justify the brutality of his assault on Edwards.

111.	Defendant Burns sadistically permitted Mr. Edwards to suffer and whimper in pain, struggling to breathe, while jokingly telling persons who came to the scene that Edwards was just "snoring". *See* Audio Recordings, from 045343, starting at counter number 16:50 and again at 23:00.

112.	As a result of this aggravated battery in which Defendant Burns inflicted injuries likely to cause great bodily injury and/or death, Plaintiffs' Decedent incurred medical bills of at least Forty-Eight Thousand Four Hundred Sixty-Seven Dollars and Eighty-Five Cents ($48,467.85) for hospitalization and treatment; for the air ambulance, LifeStar; for Rural Medical treatment; and pain and suffering documented on the audio recordings of the Blount County Sheriff's deputies that is almost too painful to listen to and fear for his life.

113.	Plaintiffs' Decedent was consciously aware of the grievous nature of his injuries, whimpering in pain.

114.	This conduct was so malicious, willful, wanton and/or criminal as to warrant the imposition of punitive damages against the Defendants.

**WHEREFORE,** Plaintiffs demand judgment against Defendant Burns and Defendant Blount County pursuant to T.C.A. § 8-8-302 in the amount of One Hundred Thousand Dollars and No Cents ($100,000.00) in special damages, Three Hundred Thousand Dollars and No Cents

($300,000.00) in General Damages, Ten Million Dollars and No Cents ($10,000,000.00) in punitive damages, pre-judgment interest, post-judgment interest, and costs of this action.

**COUNT VII**
**EDWARDS PRE-DEATH, PAIN SUFFERING AND FRIGHT**

115.    Plaintiffs adopt paragraphs 1 through 40 as fully set forth herein.

116.    As a result of the unlawful actions by the Defendant Burns, Mr. Edwards was brutally beaten and slammed onto the pavement, suffering broken ribs, bruises and contusions about his legs and arms, and multiple fractures to his head.

117.    Those injuries caused Mr. Edwards severe pain, which can be heard on the recordings. Edwards can be heard whimpering in pain and struggling to breathe as Defendant Burns snickers about the encounter. *See* Audio/Video Recording from body camera 045343, starting at counter number 16:50 and again at 23:00.

118.    As a result of the false arrest and injuries, Plaintiffs' Decedent incurred medical bills of at a minimum Forty-Eight Thousand Four Hundred Sixty-Seven Dollars and Eighty-Five Cents ($48,467.85) for hospitalization and treatment the air ambulance, LifeStar; for Rural Medical treatment; pain, suffering and fear for his life that is documented on the audio recordings of the Blount County Sheriff's deputies and almost too painful to listen to.

119.    This assault on Edwards was malicious, willful and reckless such that it warrants the imposition of punitive damages to deter Defendant Burns from similar conduct in the future and to act as a deterrent to others who might otherwise engage in such conduct.

**WHEREFORE** Plaintiffs demand judgment against Defendant Burns and Defendant Blount County pursuant to T.C.A. § 8-8-302 in the amount of Fifty-Five Thousand Dollars and No Cents ($55,000.00) in special damages, Three Hundred Thousand Dollars and No Cents

($300,000.00) in General Damages, Ten Million Dollars and No Cents ($10,000,000.00) in punitive damages, pre-judgment interest, post-judgment interest, and costs of this action.

**COUNT VIII**
**FALSE ARREST OF DECEDENT ANTHONY EDWARDS**

120.     Plaintiffs adopt paragraphs 1 through 40 as fully set forth herein.

121.     Mr. Edwards had never committed any offense for which Defendant Burns could place him under arrest at the time of the encounter with Burns. Therefore, Decedent could not have been "resisting" arrest at the time that Defendant Burns fired his taser and/or slammed or dropped Mr. Edwards to the ground and beat him.

123.     The recordings of various deputies' body cams and recording devices reveal that upon realizing how gravely injured Mr. Edwards was, one or more Blount County Deputies began calling around attempting to find open felony warrants on Mr. Edwards. *See* Radio Calls, transmissions at 1:18:59; 1:28:18; 1:29:41; 1:36:29; and 1:37:15 (*"Can you look and see if it's a felony? It's kind of important." and "OK I was kind of hoping it was a felony."*)

124.     These transmissions constitute an acknowledgement and admission that Blount County deputies had no basis on which to "arrest" Mr. Edwards, and thus their actions taken to effectuate that "arrest" were unlawful.

125.     These transmissions constitute an acknowledgement and admission that Edwards was justified in attempting to prevent the unlawful arrest and/or the unlawful use of force on him to accomplish and unlawful arrest.

126.     These transmissions constitute an acknowledgement and admission that Blount County deputies had no basis for the use of deadly force on Mr. Edwards, and thus Defendant Burns' actions taken to effectuate that "arrest" were unlawful.

127.    The efforts of various members of the Blount County Sheriff's Office to "massage" the facts prior to the arrival of those individuals who would officially take statements from Defendant Burns and the others in order to justify the brute force used by Defendant Burns is outrageous.

128.    As a result of the unlawful arrest by Defendant Burns, Mr. Edwards was brutally beaten and slammed onto the pavement, suffering broken ribs, bruises and contusions about his legs and arms, and multiple fractures to his head.

129.    Those injuries caused Mr. Edwards severe pain, which can be heard on the recordings. Edwards can be heard whimpering in pain and struggling to breathe as Defendant Burns snickers about the encounter. *See* Audio Recording from body camera 045343, starting at counter number 16:50 and again at 23:00.

130.    As a result of the false arrest and injuries, Plaintiffs' Decedent incurred medical bills of at a minimum Forty-Eight Thousand Four Hundred Sixty-Seven Dollars and Eighty-Five Cents ($48,467.85) for hospitalization and treatment the air ambulance, LifeStar; for Rural Medical treatment; pain and suffering and fear for his life which is documented on the audio recordings of the Blount County Sheriff's deputies and almost too painful to listen to.

131.    This false arrest was malicious, willful and reckless such that it warrants the imposition of punitive damages to deter Defendant Burns from similar conduct in the future and to act as a deterrent to others who might otherwise engage in such conduct.

**WHEREFORE** Plaintiffs demand judgment against Defendant Burns and Defendant Blount County pursuant to T.C.A. § 8-8-302 in the amount of Fifty-Five Thousand Dollars and No Cents ($55,000.00) in special damages, Three Hundred Thousand Dollars and No Cents

($300,000.00) in General Damages, Ten Million Dollars and No Cents ($10,000,000.00) in punitive damages, pre-judgment interest, post-judgment interest, and costs of this action.

## COUNT IX
## WRONGFUL DEATH OF ANTHONY EDWARDS

132.     Plaintiffs adopt paragraphs 1 through 40 as fully set forth herein.

133.     At all times material hereto, Defendants owed a duty to Decedent Edwards to refrain from injuring Edwards during an arrest.

134.     Defendant Burns intentionally or, in the alternative, negligently slammed or dropped Mr. Edwards to the ground, striking Mr. Edwards' head against the pavement and causing multiple fractures in his head and multiple rib fractures.

135.     As a direct and proximate result of the actions and inactions of Defendant Burns, Mr. Edwards died from these injuries, leaving behind two small children.

136.     Defendant Burns' actions were criminal, willful, wanton and/or done in reckless disregard to the rights of Mr. Edwards, and/or were objectively unreasonable and unnecessary given the circumstances.

137.     Plaintiffs, on behalf of Decedent's children, is entitled to be compensated for the loss of the support, companionship, consortium and society of their father.

138.     Plaintiffs' Decedent incurred medical bills of at a minimum Forty-Eight Thousand Four Hundred Sixty-Seven Dollars and Eighty-Five Cents ($48,467.85) for hospitalization and treatment; for the air ambulance, LifeStar; for Rural Medical treatment; and pain and suffering. He also incurred funeral expenses in the amount of Six Thousand Two Hundred Eleven Dollars and two cents ($6,211.02).

**WHEREFORE,** Plaintiffs, on behalf of the minor children, demands judgment against Defendant Burns and Defendant Blount County pursuant to T.C.A. § 8-8-302 or, in the alternative,

T.C.A. § 29-20-205, in the amount of One Hundred Thousand Dollars and No Cents ($100,000.00) in special damages, Three Hundred Thousand Dollars and No Cents ($300,000.00) in General Damages, Twenty-Five Million Dollars and No Cents ($25,000,000.00) in punitive damages, pre-judgment interest, post-judgment interest, and costs of this action.

## COUNT X
## NEGLIGENT TRAINING AND SUPERVISION BY BLOUNT COUNTY AND THE BLOUNT COUNTY SHERIFF JAMES BERRONG

139. Plaintiffs adopt paragraphs 1 through 40 as fully set forth herein.

140. Sheriff Berrong and Blount County had a duty to train, manage, and supervise those persons working for the Sheriff's Office to prevent harm to members of society and the use of excessive force in their encounters with law enforcement.

141. Sheriff Berrong and Blount County were negligent, or in the alternative, grossly negligent, in failing to train and supervise Defendants Burns and Patty as to the proper circumstances under which force could be used, including, but not limited to, proper "takedown" measures in apprehending and/or taking persons into custody. Sheriff Berrong and Blount County were also negligent or grossly negligent in failing to properly and completely investigate allegations of the excessive use of force.

142. As noted in paragraphs 90-91, incorporated herein, Sheriff Berrong knew from past litigation, complaints and incidences that the deputies in his Office routinely used unnecessary force in apprehending and/or taking into custody suspects and often engaged in the gratuitous infliction of pain and punishment. This culture of violence within the Blount County Sheriff's Department had existed for years, long enough for Berrong and Blount County to be aware of it. Not only did Berrong not discourage such gratuitous violence, he himself actually participated in it, thus sending the message to his subordinates that such conduct was acceptable on the job. Upon

information and belief, deputies frequently did not receive retraining after receiving an excessive force complaint.

143.  Despite the obvious need for additional and/or adequate training regarding the proper use of force in apprehending and/or taking someone into custody, Sherriff Berrong and Blount County failed to provide such training, unreasonably and/or in conscious disregard to the foreseeable consequence that there would be further instances of the excessive use of force, such as the events leading to Mr. Edwards' untimely death.

144.  Upon information and belief, Sherriff Berrong was actively involved in the lax investigation conducted in the wake of Mr. Edwards' death; in July 2017, Berrong himself issued a statement to local media clearing Defendant Burns of any wrongdoing. Defendant Burns was not disciplined or retrained in the appropriate use of force following the events leading to Mr. Edward's death. And upon information and belief, numerous citizen complaints and incidences of excessive force had been filed or reported prior to June 25, 2016, which were resolved overwhelmingly in favor of the involved officer(s).

145.  By failing to conduct impartial investigations and discipline those officers who engaged in the use of excessive force, Sherriff Berrong and Blount County acquiesced in this misconduct and negligently failed their duties and responsibilities as shields of the citizens of Blount County. Sherriff Berrong and the County acted unreasonably and/or in conscious disregard of instances of the excessive use of force and gratuitous violence by deputies employed by the Blount County Sheriff's Office.

146.  Sherriff Berrong's negligent failure to conduct impartial investigations and discipline the deputies under his command was widely known to Blount County Sherriff's

deputies, leading them to believe they could use excessive force with impunity, without fear of punishment or other adverse consequences.

147.    Anthony Edwards was subjected to the use of unnecessary force as a result of the negligent, or in the alternative, grossly negligent failure of Defendants Berrong and Blount County to train, monitor, supervise, control, counsel, investigate, and discipline. Had Defendant Burns been adequately trained in the appropriate use of force, including, but not limited to, proper "takedown" measures and/or had Sherriff Berrong and Blount County properly investigated prior instances of excessive force and disciplined those officers involved, Mr. Edwards would be alive today.

148.    Mr. Edwards suffered severe physical injuries and suffered awful pain as he lay on the ground after the brutal attack by Defendant Burns and most of the last hours of his life were filled with almost unbearable pain and the knowledge that he desperately needed medical care which was not immediately provided as officers on the scene took their time calling for medical help.

149.    As a direct and proximate result of Defendants Berrong and Blount County's negligence Mr. Edwards' was injured and damages sustained.

150.    Mr. Edwards suffered severe head trauma, fractured ribs which required medical care and treatment, pain, fear and humiliation at being rendered impotent to protect himself from the injuries inflicted on him and from hearing Defendant Burns make light of his suffering by suggesting that Burns heard Edwards "snoring" when, in reality, Edwards was struggling to breathe due to his injuries.

**WHEREFORE** Plaintiffs demand judgment against Defendants Berrong and Blount County pursuant to T.C.A. § 29-20-205, or in the alternative, T.C.A. § 8-8-302 in the amount of

Twenty-Five Million Dollars and No Cents ($25,000,000.00), costs of this action, reasonable

attorneys' fees, and pre-judgment and post-judgment interest.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues triable as of right by a jury.

**RESPECTFULLY SUBMITTED**, this the **22nd** day of **November**, 2017.

**THE BOWLIN LAW FIRM P.C.**

BY:  *s/ Troy L. Bowlin, II*
Troy L. Bowlin, II, BPR No. 025893
Attorney for Courtney Adams and Kim
Huskey Personal Representative of the
Estate of Anthony Edwards
FIRST TENNESSEE PLAZA
800 South Gay St. Suite 2131
Knoxville, Tennessee 37929
troy@tblf-pc.com
www.thebowlinlawfirm.com